STATE of Missouri,
Plaintiff-Respondent,

v.

Steven L. TONEY, Defendant-Appellant.

No. 47351.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 25, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Oct. 30, 1984.

Application to Transfer Denied
Dec. 18, 1984.

Kathryn Shubik, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Carrie D. Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Judge.

This is an appeal from a jury verdict and judgment convicting Steven L. Toney of forcible rape and sodomy. §§ 566.030, 566.060 RSMo. 1978. The trial court sentenced appellant as a persistent offender and as a dangerous offender to two consecutive terms of life imprisonment. § 558.016 RSMo. 1978. The judgment is affirmed.

Appellant contends the trial court erred in:

(1) allowing the case to go to trial because the information in lieu of indictment was fatally defective;

(2) sentencing appellant to consecutive rather than concurrent life terms;

(3) admitting into evidence photographs of appellant which were used in the identification of appellant and allowing the jury to examine the photographs during its deliberation;

(4) overruling appellant's objection to witness Larry Freeman being called by the state;

(5) failing to define the phrase "serious physical injury;"

(6) deferring ruling on appellant's pro se motion for disclosure of data relating to master and jury lists;

(7) overruling appellant's pre-trial motion to suppress identification testimony;

(8) permitting the police officer who arranged the pre-trial photographic and line-up identifications to testify regarding those lineups;

(9) denying appellant's pre-trial motion to suppress identification; and

(10) failing to declare a mistrial on the court's own motion when an improper statement was made by the state during re-direct examination of a state witness.

Appellant has also filed a pro se brief in which he raises four points which are similar to points raised in his counsel's brief except that appellant alleges additionally violations of his constitutional rights under the Missouri and U.S. Constitutions.

Appellant's points 5, 8 and 10 were not raised in the trial court. They may be considered only under plain error Rule 30.20. No manifest injustice or miscarriage of justice has resulted from the alleged errors, if such they were, and points 5, 8 and 10 are denied without discussion.

At approximately 3:00 a.m. on September 30, 1982, the victim arrived home at her apartment complex in Richmond Heights, St. Louis County. She had worked from 4:00 p.m. to 12:00 midnight and had a couple of drinks with some friends before returning to her residence. As she entered the front door of the apartment complex, she noticed a man on the landing of the stairway whom she later identified as appellant.

The victim continued up the stairway and put her key in the lock of her third-floor apartment. Appellant then grabbed the victim from behind, placed one hand over her mouth, put a knife to her throat, and dragged her back down the stairway to a wooded area behind the apartment complex. There appellant forced the victim to disrobe, sodomized, and raped her.

Appellant's first contention is that the trial court erred in hearing the present case because the information in lieu of indictment was fatally defective in that Count II, the sodomy count, failed to allege that the victim and appellant were not married and that the sodomy was committed without the victim's consent. The point is denied.

Count II, as originally filed, charged only that appellant "had deviate sexual intercourse with [victim] by the use of forcible compulsion." It omitted the elements of non-marriage and lack of consent. The trial court, however, permitted the state to file an amendment to the information after the close of all the evidence, but before the jury's verdict. The amendment deleted the phrase "by the use of forcible compulsion" and inserted in its place the phrase "to whom the defendant was not married, without the consent of [victim] by the use of forcible compulsion."

There are three issues. First, did the trial court err in permitting the state to

amend the information? Second, did the amendment effectively add all the necessary elements to the information? Third, even if the court did not err in permitting the amendment, did the court have jurisdiction to try the case prior to the amendment?

■ "Any information may be amended or substituted for an indictment at any time before verdict or finding if no additional or different offense is charged and if a defendant's substantial rights are not thereby prejudiced." Rule 23.08. "If it can be clearly gathered from what is stated in the information that the prosecuting attorney intended to charge a particular offense or the violation of a specific statute, the information may be amended, as to both form and substance, even if the original information is insufficient to charge the defendant with a crime." *State v. Umfleet*, 538 S.W.2d 55, 58[1] (Mo.App.1976).

There was no error in granting the state's motion to amend.

A more troubling argument is advanced by the appellant when he points out that when the prosecutor made his oral motion to amend the information, which the court granted, the prosecutor did not specifically mention the "without consent," but only the non-marriage, element.

This claim of error was never raised in the trial court except by defense counsel's objection to the amendment to the information. Appellant did not include any allegation of error relating to the amendment to the information in his motion for a new trial. Nonetheless, this court must consider the point because it raises the question of jurisdiction.

When the prosecutor made his motion to amend, defense counsel first said she had no objection and then a few minutes later said she wanted to object. The trial court ruled that it would permit an amendment to conform with evidence which had been received without objection. Trial evidence of both elements was received without objection.

When the state, three months later, filed its written motion it included both the non-marriage and the lack of consent element. The written motion was granted by the court.

It could be argued that the amendment supplying the lack of consent element was not made prior to the verdict as required by Rule 23.08, but this court construes the trial court's grant of the oral motion to amend prior to the verdict to include permission to add to the information all missing elements, evidence of which was received without objection. There was no error in allowing the amendment to the information under the facts in the present case.

■ To say the appellant was not apprised of the elements of the sodomy charge would be to stretch credulity and exalt form over substance. Appellant was charged with both rape and sodomy which arose out of the same incident. The rape information contained all the elements which were missing from the initial sodomy charge. Appellant's defense was alibi, not that the victim had consented. The evidence of all elements of the crime came in without objection. The trial court granted the motion to amend to include all of the elements. There was no error.

This court could find no cases which speak directly to the question of jurisdiction to try a case under a defective information which was amended to supply missing elements of a crime after the close of the evidence, but before the verdict.

■ Rule 23.08, however, permitting an amendment any time before a verdict, carries the strong implication that the jurisdiction exists provided the amendment charges no different or additional offense and does not prejudice the substantial rights of the defendant. See *State v. Jackson*, 604 S.W.2d 832, 835[1] (Mo.App.1980).

This court finds the trial court had jurisdiction to try the cause in view of the amendment to the information which was permitted in accordance with Rule 23.08.

The cases in which amendments to informations were challenged and approved by the trial court, but where the jurisdiction issue was not raised, are written on the assumption there is jurisdiction as long as allowing the amendment is not error.

In *State v. Gardner*, 522 S.W.2d 323 (Mo.App.1975), the court held that the state could amend its information after its case-in-chief to add the essential element of intent to kill or do great bodily harm to its attempted charge of assault without malice, § 559.190 RSMo. 1969. "The effect of the amendment was merely to charge correctly and sufficiently the offense attempted to be charged in the original information and did not operate to prejudice the substantial rights of the defendant." 522 S.W.2d at 324[1, 2]. See also *State v. Jackson, supra*. Research disclosed from other jurisdictions only one case which is arguably relevant to the present case; *Shanklin v. State*, 369 So.2d 620 (Fla.App.1979).

There, Shanklin had pled guilty to the charge of battery of a law enforcement officer. The information, however, omitted the element of knowingly striking a law enforcement officer. *Shanklin* was placed on probation pursuant to his guilty plea.

During his later parole revocation hearing, *Shanklin* contended that his conviction was a nullity because the court lacked jurisdiction to place him on probation in that the element of knowingly striking a law enforcement officer was missing from the information. The Florida Court of Appeals rejected Shanklin's [appellant's] contention:

> On the same rationale, we hold that appellant's plea of guilty to the crime of battery of a law enforcement officer, after the state had properly laid a factual basis, constituted a tacit amendment of the information to properly charge that offense. Once the information is deemed to have been amended, jurisdiction is no longer a problem, and the judgment cannot be collaterally attacked.

369 So.2d at 622.

Appellant's attack in the case under review must also fail.

For his second point, appellant argues that the trial court erred in sentencing appellant to consecutive terms of imprisonment. The trial court believed that consecutive sentences were mandated by § 558.026.1 RSMo. 1978 (1983 Cum.Supp.)[1]. Appellant maintains that § 558.026.1 permits, but does not require, consecutive sentences when a defendant is convicted for two sex crimes and that therefore this case should be remanded for resentencing. The point has no merit.

The issue, one of first impression, is whether that part of § 558.026.1 which mandates that a sentence for a sex crime be served consecutively to sentences "for other offenses" committed at the same time or during the sex crime is restricted to situations where a defendant is convicted of a sex crime and one or more nonsexual offenses.

■ The statute is not so limited in scope and requires a consecutive sentence for the sexual offense where the defendant is convicted of a sex crime and one or more offenses which occurred at the same time as, or during, the sexual offense, regardless of whether the other offense or offenses were also sex crimes.

The phrase "for other offenses" is nowhere expressly defined and its plain meaning in the context of the statute is any offense other than the particular sexual offense which is referred to in the statute. Thus, even if the other offense is another

---

1. *558.026. Concurrent and consecutive terms of imprisonment.*—1. Multiple sentences of imprisonment shall run concurrently unless the court specifies that they shall run consecutively; except that, in the case of multiple sentences of imprisonment imposed for the felony of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid and for other offenses committed during or at the same time as that rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid, the sentences of imprisonment imposed for the other offenses may run concurrently, but the sentence of imprisonment imposed for the felony of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid shall run consecutively to the other sentences.

sexual offense, the sentences must be served consecutively. The second point is denied.

Appellant in his third point complains that the trial court erred in admitting into evidence photographs of appellant and in allowing the jury to examine the photographs during its deliberations. There was no error.

One of the disputed issues at trial was whether the victim correctly identified appellant as the rapist. After viewing over sixty photographs, the victim picked appellant's picture from a group of black and white photographs or mug shots of four possible suspects. Three suspects, including appellant, were represented by front and side profile photos of the head and shoulders. The fourth was a front view. This group of photographs was state's Exhibit 1.

State's Exhibit 2 was a set of four color photographs shown to the attendant at a gas station which was near the scene of the crime. The attendant identified appellant from this group of photos as the man who had come to the gas station around 3:30 a.m. on September 30, 1982.

■ "The trial court has wide discretion in the admission of photographs in evidence." *State v. Shive*, 620 S.W.2d 412, 413[1–3] (Mo.App.1981). Mugshots are admissible if the objectionable parts of the photographs which contain police data are masked and the photographs are relevant to the question of identity. *State v. Futrell*, 565 S.W.2d 465, 467[2] (Mo.App.1978).

■ The trial court's discretion was not abused in allowing the photographs into evidence. The record fails to show that the jury examined the photographs during its deliberations. An extended treatment of this point would have no precedential value and it is denied without further discussion.

For his fourth point, appellant contends the trial court erred in allowing Larry Freeman, an investigator for the state, to testify in rebuttal to the testimony of appellant's alibi witness, Mamie Toney. The point has no merit.

Mamie Toney, who is appellant's grandmother, maintained that on the day of appellant's arrest she could remember where he was on the night of the rape, which was about two weeks prior to the arrest.

On cross-examination, she testified that she spoke with Larry Freeman on a Wednesday about a week before appellant's trial. In rebuttal, Larry Freeman testified that he had spoken with Mamie Toney on Tuesday, not Wednesday.

Appellant argues that Mr. Freeman's testimony was not proper rebuttal testimony because it concerned a collateral issue developed on cross-examination of Mamie Toney. "Rebuttal evidence may explain, counteract, repel or disprove a defendant's evidence either directly or by implication. ... The precise scope of the rebuttal testimony is within the discretion of the trial court." *State v. Cameron*, 604 S.W.2d 653, 658[9–11] (Mo.App.1980).

In *State v. Roberts*, 622 S.W.2d 226 (Mo. App.1981), this court held that the trial court had not abused its discretion in allowing the state to call a witness who rebutted the defendant's alibi witness's claim that she had got off work at 7:30, arrived at a party at 8:30 and was with the defendant at the party at the time of the midnight robbery. The rebuttal witness testified that the alibi witness had got off work at 10:46, not 7:30.

■ Similarly, in the present case, the rebuttal witness's testimony does not directly refute the alibi, but instead indirectly rebuts the testimony of the alibi witness by undercutting her credibility. No abuse of discretion occurred.

Appellant also attacks the admissibility of Larry Freeman's testimony on the ground that Mr. Freeman was not an endorsed state's witness. See Rule 23.01(f). In *State v. Curtis*, 544 S.W.2d 580 (Mo. banc 1976), the court held that the state has the obligation to endorse alibi rebuttal witnesses and rebuttal witnesses to the defense of mental disease or defect because the accused has the duty to disclose its alibi and mental disease or defect wit-

nesses. See Rule 25.05(A). *State v. Curtis* is inapplicable on two grounds.

First, Mr. Freeman did not directly refute appellant's alibi. Instead, his testimony merely impeached the credibility of Mamie Toney. The state's rebuttal witness in *State v. Curtis*, on the other hand, testified that the defendant did not suffer from a mental disease or defect.

Second, Mr. Freeman was in fact endorsed, although not until the first day of trial. Mr. Freeman's late endorsement is understandable because he had not even visited Mamie Toney until the Tuesday in the week before trial. The rebuttal witness was endorsed on the first day of trial, but was not called to testify until the third day. The trial court gave counsel for appellant leave to interview Mr. Freeman before he testified. No substantial prejudice to appellant occurred because of the late endorsement.

For his sixth point, appellant argues that the trial court erred in deferring a ruling on appellant's pro se motion for disclosure of data relating to master grand jury lists. This court finds no error.

Before trial appellant filed a motion to dismiss and quash the indictment on the grounds that the grand jury master list was chosen in a manner which under-represented women, non-white persons, and persons of appellant's economic class.

In order to obtain the demographic data necessary to support the challenge to St. Louis County's grand jury system, appellant also filed a motion for disclosure. The trial court overruled the motion to dismiss and quash on the second day of trial, but deferred a ruling on the motion for disclosure.

No objection was made to the deferral. No action was taken after trial to obtain a ruling on the motion for disclosure. The trial court never ruled on the motion.

 Allegations of error shall not be considered on appeal unless they were presented to or expressly decided by the trial court. *State v. Eaton*, 394 S.W.2d 402, 403[1, 2] (Mo.1965); Rule 84.13(a).

The trial court never ruled on the motion for disclosure. Therefore, this court cannot determine whether it was error to deny the motion. Because appellant never objected to the deferral of a ruling on the motion, his complaint will not be heard here.

In addition, the record shows that the trial court informed appellant that he would grant the motion for disclosure if appellant were convicted, apparently because of a belief that appellant would not be prejudiced by an unconstitutionally composed grand jury if he were acquitted. The failure to renew the request for grand jury data under these circumstances can be viewed as nothing but an abandonment of the motion. Appellant's sixth point is denied.

Appellant's point seven charges trial court error in not suppressing the identification testimony because the reliability of both the in-court and out-of-court identifications was suspect, the identification procedures being impermissibly suggestive.

 Because appellant attacks all the identification testimony, a brief review of the legal principles applicable to identification testimony will be helpful.

Thus, in considering the out-of-court identifications, a two-step analysis is required. *State v. Higgins*, 592 S.W.2d 151, 159 (Mo.1979). First, the police procedures are to be considered to determine if they are impermissibly suggestive. Second, if they are found to be impermissibly suggestive, then the inquiry turns to the reliability of the in-court identification. In determining reliability, the court looks at the "totality of the circumstances" including:

(1) The opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

*State v. Sanders*, 621 S.W.2d 386, 389[1, 2] (Mo.App.1981).

Appellant first argues that the three out-of-court identifications were impermissibly suggestive. The photographic lineup from which the victim identified appellant was improper, claims appellant, because appellant's photo was the only one which contained police data from the Department of Corrections.

The live lineup was unduly suggestive allegedly because the victim was informed that the man she had identified would be in the lineup and appellant was the only person who was in the live lineup and whose picture appeared in the photo spread.

The identification by the gas station attendant was also impermissibly suggestive, according to appellant, because appellant's photograph was the only one which was clearly a mugshot.

■ Addressing appellant's impermissibly suggestive arguments seriatim, this court finds them wholly without merit. Although appellant's photograph in Exhibit # 1 was the only one with police data from the Department of Corrections, the other three photographs bore police data from other sources, such as the St. Louis County Police. This court does not believe that these differences in the source of the mugshots rendered the lineup impermissibly suggestive.

Further, the police data may not have been seen by the victim. The record does not show whether the data on the four photographs in Exhibit # 1 was masked when they were first shown to the victim. The data in fact was masked when the photographs were received in evidence at trial.

Arguably, the live lineup was impermissibly suggestive for the reasons stated by appellant; however, appellant has failed to demonstrate a connection between the suggestiveness of the live lineup and the factors of reliability.

The real importance of the suggestiveness of out-of-court identification arises in the evaluation of the in-court identification. The question is the nexus between any claimed suggestiveness and the factors of reliability. Rarely will that nexus be so complete as to require the eyewitness identification to be removed from the jury's consideration. Normally, the issue will be one for the fact finder and ordinarily a matter for cross-examination to test the reliability of the in-court identification by calling the jury's attention to the suggestibility of the original identification process.

*State v. Sanders*, 621 S.W.2d at 389.

■ Turning to the factors of reliability, nothing requires exclusion of the identification evidence. Despite appellant's contention to the contrary, the victim had an opportunity to observe her assailant's face twice, and maybe three times: (1) when she first entered the stairwell; (2) when her attacker paused at the corner of the apartment building while dragging the victim into a wooded area; and (3) perhaps when her attacker compelled her to commit oral sex.

■ There was nothing to distract the victim's attention from the horrible criminal transaction. The level of certainty of each of the identifications was high. The length of time between the rape and sodomy and the initial confrontation with appellant in the photographic lineup was only eight days. There were some discrepancies between the original description given by the victim and the physical characteristics of appellant, but these discrepancies are unrelated to the claims of suggestiveness. Cf. *State v. Sanders*, 621 S.W.2d at 389–390. Finally, reliability of the in-court identification is supported by the victim's identification of appellant from the photographic array, which occurred before the arguably suggestive lineup.

Exhibit # 2, which was shown to the gas station attendant included four photographs. It is true that appellant's is the only photograph which has police data, but the data contained only the name of a police department and a number. This distinguishing characteristic is not impermissi-

bly suggestive of appellant's involvement in the crime.

In addition, as in the case of Exhibit # 1, the record does not indicate whether the police data was masked when the photographs were presented to the gas station attendant. Finally, any suggestiveness in Exhibit # 2 could not have affected the reliability of the gas station attendant's in-court identification. Point seven is denied.

For his ninth point appellant alleges error in admitting evidence of the live lineup because it was obtained in violation of his constitutional guarantee against arrest without warrant. This point is completely devoid of merit.

Appellant was first arrested at his home as a suspect on an unrelated forgery charge. While in jail as a forgery suspect, he was arrested for the rape and sodomy pursuant to a valid warrant. Appellant was soon placed in the lineup which he claims should have been suppressed.

There is no basis in the record for the assertion that appellant was initially arrested for forgery in his home without a warrant. The burden of presenting a record of the proceedings to the appellate court is on the appealing party. *State v. Silinzy,* 621 S.W.2d 114, 116 (Mo.App. 1981).

Even assuming that appellant's first arrest was without a warrant and unconstitutional, still the lineup was not the fruit of the first arrest. It was conducted after the second arrest on the rape and sodomy charges, which was made pursuant to a warrant.

It matters not whether appellant was in the illegal custody of the Brentwood police when he was arrested for the rape and sodomy. The arrest was lawful and there was no violation of appellant's constitutional rights in the conduct of the lineup.

Appellant relies on *State v. Mayes,* 654 S.W.2d 926 (Mo.App.1983), in which this court held that photographs of a lineup taken after an unconstitutional warrantless arrest were inadmissible absent a showing that the photographs of the lineup would have been inevitably obtained without the constitutionally infirm arrest. *Id.* at 935. Appellant's reliance on *State v. Mayes,* however, is misplaced because in the present case there was a lawful arrest and in *Mayes* there was not. The point is denied.

Appellant has filed a pro se brief and a supplemental pro se brief. He contends the trial court erred in: (1) hearing the case because the information in lieu of indictment failed to allege all the elements of sodomy; (2) sustaining the prosecuting attorney's motion in limine to exclude evidence that another person committed the rape and sodomy; (3) denying appellant's motion for assistance and advancement of funds for the procurement of investigative services; and (4) submitting the verdict directing instructions. In his supplemental pro se brief, appellant alleges the trial court was without jurisdiction to sentence him for a Class A felony.

Appellant's first pro se point is roughly identical to the first point in his counsel's brief and is denied for the same reasons.

In his second point, appellant alleges error in precluding him from allowing evidence that the police suspected a man named Arnett Smith before appellant became a suspect and in excluding a newspaper article from the St. Louis Globe Democrat which showed a composite drawing of a suspect wanted for rapes committed in the same area and which matched the victim's initial description of appellant. The article appeared in the newspaper almost two weeks after appellant had been confined.

No objection was voiced to the trial court's ruling and this court, reviewing only for plain error, Rules 29.12(b), 30.20, finds no manifest injustice or miscarriage of justice. Appellant's second pro se point is denied.

Appellant's third pro se point is that the trial court erred in overruling his motion for assistance and advancement of funds for the procurement of investigative services.

Whether to furnish investigative services at public expense to an indigent defendant is a matter within the sound discretion of the trial court. *State v. Carroll*, 629 S.W.2d 483, 489 (Mo.App.1981).

The trial court did not abuse its discretion because no showing was made why appellant's public counsel, who had two full-time investigators at her disposal, could not provide the investigative services. Pro se point three is denied.

Appellant next argues that the rape and sodomy verdict directors Instructions 5 and 7 respectively, were erroneous because they submitted compound propositions.

Instructions 5 and 7 conform to MAI–CR2d 20.02.1 and 20.08.1 respectively. This court is powerless to declare as erroneous the submission of an applicable approved MAI instruction. *State v. Frank*, 639 S.W.2d 209, 211[2, 3] (Mo.App.1982). Pro se point four is also denied.

For his supplemental pro se point, appellant alleges the trial court erred in sentencing him for a class A felony instead of a class B felony because the information in lieu of indictment alleged the acts necessary to constitute the class B felonies of rape and sodomy, but did not allege either that the crime was a class A felony or the acts necessary to increase the classification of rape and sodomy.

Although the information in lieu of indictment does not track the language and form used by MACH–CR 20.02 and 20.08, the failure to allege within each count that appellant committed a class A felony by threatening serious physical injury on the victim is not error in the present case.

After setting forth in Counts I and II the facts constituting the rape and sodomy, the information states in a separate paragraph that during the course of the rape and sodomy appellant threatened to inflict the victim with serious physical injury. This factual allegation was used to support the allegation that appellant was a dangerous offender rather than to support the charges of rape and sodomy.

The information taken as a whole, however, alleges that the rape and sodomy were committed with the threat of serious physical injury and the information cites generally to §§ 566.030, 566.060 in which rape and sodomy are elevated to class A felonies if there is a threat of serious physical injury. Thus the information apprises the accused that he may be convicted of the class A felony of rape. It should also be noted that nowhere in the information does the state limit itself to charges that appellant committed class B felonies.

The test of the sufficiency of an information or indictment is whether it contains all the essential elements of an offense as set out in the statute and clearly apprises the defendant of the facts constituting the offense. See *State v. Gilmore*, 650 S.W.2d 627, 628[3] (Mo. banc 1983). The information here meets the test because all factual elements necessary to allege the class A, rather than the class B, felonies of rape and sodomy are present. The better practice, however, is to follow the approved forms for criminal charges. The supplemental pro se point is denied.

The judgment is affirmed.

SMITH, P.J., and STEPHAN, J., concur.