REINHARD, Judge.
Defendant appeals after his conviction by a jury of robbery in the first degree in violation of § 569.020, RSMo 1978. The jury assessed punishment, and the court sentenced defendant to a twelve year term of imprisonment pursuant to the jury’s recommendations. We affirm.
According to the testimony of Kay Reilly, a checker at Dierberg’s supermarket, on April 8, 1983, at approximately 3:00 p.m., she was working at the cashier counter when a man approached and placed an envelope on the counter. A note written on the envelope said that he had a gun and directed her to place money in the envelope. She did so, whereupon the man took the envelope and ran out of the store. She stated that $863 was taken, basing this on a shortage figure found by other store employees at the end of the day. The store lighting conditions were good, and she had an opportunity to view the robber’s face for two to three minutes. He had a mustache and an unshaven face, and wore a blue jean jacket, blue jeans, dark black-rimmed glasses, and a stocking cap which covered most of his hair but did not cover his face. She gave this description to the police shortly after the robbery, although she did not mention the mustache.
Approximately an hour after the incident, defendant was brought to the store by police officers. Miss Reilly observed him from a room behind the courtesy counter, looking through a two-way mirror. She did not positively identify him, stating at trial that she could not see him clearly. An hour later, Miss Reilly was brought to the police station for a second viewing of defendant in a one-person lineup. A photograph of the lineup examined at trial revealed that defendant was wearing different glasses than those described, and was not wearing a jean jacket or a cap. Despite these differences in apparel, she positively identified him at that time as the *291 man who robbed her. Miss Reilly also positively identified defendant in court.
A second witness, Christine Candetto, age 13, testified that she was seated in a parked car in the Dierberg’s parking lot on the day of the robbery, when she observed a man running out of the store. He got into an automobile driven by another person, which then drove off. She gave the police a description of the ear, and approximately two hours later positively identified defendant in a one-person lineup at the police station as the man she saw running from the store.
An off duty police detective testified that after he heard a radio broadcast that a robbery had just occurred, he pulled over an automobile driven by defendant, which matched the description of the suspect vehicle. Another officer responded to the scene, and assisted him in arresting defendant. They searched the vehicle and found $405 “stuffed” halfway under the driver’s seat, between the seat and the console area.
Defendant’s testimony was that he had been on his way to pay a water bill, after leaving his workplace, when he developed car trouble and was forced to turn back. He stated that the money in his car had been borrowed from friends and co-workers. He denied having been at Dierberg’s or having anything to do with the robbery there.
Defendant’s co-workers, testifying in his defense, verified that he left work at the time stated and that he had been having car trouble. They also stated that they had loaned him money, although some uncertainty existed as to the dates involved. However, none of them could account for his whereabouts at the time of the robbery.
In defendant’s sole point on appeal, he contends that the trial court erred in overruling his motion to suppress extra-judicial identification testimony by Kay Reilly. Prior to trial, the court held a hearing on defendant’s motion to suppress extra-judicial identification by witnesses on the grounds, among others, that the showup procedure utilized was impermissibly suggestive and not in accordance with the mandates of the United States Constitution or the Missouri Constitution.
The legal principles pertinent to the admissibility of identification testimony were briefly set out by our court in State v. Toney, 680 S.W.2d 268, 275-276 (Mo.App.1984) in which we stated:
Thus, in considering the out-of-court identifications, a two-step analysis is required. State v. Higgins, 592 S.W.2d 151, 159 (Mo.1979). First, the police procedures are to be considered to determine if they are impermissibly suggestive. Second, if they are found to be impermissibly suggestive, then the inquiry turns to the reliability of the in-court identification. In determining reliability, the court looks at the “totality of the circumstances” including: (1) The opportunity of the witness to view the criminal at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of the witness’ prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. State v. Sanders, 621 S.W.2d 386, 389 (Mo.App.1981).
Applying these principles, we first note that as admitted by defendant, it is settled law in Missouri that the prompt showing of a suspect to a witness in a one-on-one viewing is not necessarily improper. State v. Bynum, 680 S.W.2d 156, 158 (Mo. banc 1984). In this instance, both showups were held within a short time, two hours, of the incident, a factor which the court will consider in judging the impermissibility of the showup procedure. See, State v. Cotton, 660 S.W.2d 365, 367 (Mo.App.1983). Furthermore, police testimony revealed that no other persons were available to participate in a lineup at the precinct station to which defendant was taken, another circumstance which can be weighed in determining such claims. See, State v. Bynum, 680 S.W.2d at 158; State v. Cotton, 660 S.W.2d at 367. Additionally, the police made no suggestive remarks or motions indicating that defend *292 ant was the culprit during or prior to the showups. However, given the unique tendency for misidentifieation inherent in a procedure wherein two showups are held in close proximity to each other, we believe that whereas the second showup may not have been impermissibly suggestive, the better practice would have been to hold a lineup containing several individuals during the second confrontation.
Even if the second showup was imper-missibly suggestive, turning to the factors of reliability under step two of our analysis, we conclude that the identification testimony was admissible in that it was “reliable” under the “totality of the circumstances test.” Toney, 680 S.W.2d at 275. Looking at the factors set out in Toney, we find that defendant admits that Miss Reilly had ample opportunity to view him at the time of the crime, and had a high degree of attention. The close proximity between the crime and the confrontation, two hours, poses little risk of unreliability, since courts have sustained as reliable identifications occurring months after crimes have occurred. See, State v. Story, 646 S.W.2d 68, 71 (Mo. banc 1983). Defendant contends, however, that the inaccuracy of the witness’s prior description to the police makes her later identification unreliable. The only discrepancies appearing of record concern defendant’s eye color, the style of glasses he wore, and the omission of the fact that he wore a mustache. However, these discrepancies are minor and affect only the weight of the identification testimony, not its admissibility. See, State v. Powell, 648 S.W.2d 573, 577 (Mo.App.1983). Furthermore, we find that the testimony was reliable in that the witness demonstrated a high degree of certainty at the second confrontation. Defendant contends that her initial failure to recognize him makes her later identification unreliable. He asserts that it was her willingness to please the police which resulted in the second positive identification. This is not borne out by the facts. As she stated at trial, her failure to identify defendant at the store was due to her inability to see him clearly through the two-way mirror. Upon seeing defendant in a well-lighted room at the police station, she was able to positively identify him.[1] We also note that a prior tentative identification will not render inadmissible a later positive identification. See, State v. Higgins, 592 S.W.2d 151, 160 (Mo. banc 1979). After carefully reviewing the entire record, we conclude that Miss Reilly had an independently reliable basis for her extra-judicial and in-court identification. Finally, it should not go unnoticed that additional evidence linked defendant to the crime. Defendant was independently identified by Miss Candetto as the man running from the store. He was found in the general vicinity of the robbery shortly after it occurred, driving an automobile which matched the description of the suspect vehicle. In the car, the police found $405 crammed partially under the driver’s seat, between the seat and the console area, a portion of the car which we note is not ordinarily used to carry large amounts of cash. Furthermore, the amount found equaled approximately half the money stolen in the alleged two-man robbery.
Judgment affirmed.
DOWD, P.J., and CRIST, J., concur.

. Defendant’s reliance on Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969) is misplaced. In Foster the witness’s failure to identify defendant at the first lineup was not affected by poor visibility at the viewing site, as was the case here.