STATE of Missouri, Respondent,

v.

Gerald POLLOCK, Jr., Appellant.

No. WD 50302.

Missouri Court of Appeals,
Western District.

Nov. 14, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 26, 1995.

Application to Transfer Denied
Feb. 20, 1996.

**2**

Roy W. Brown and Bruce B. Brown, Kearney, for appellant.

Michael D. Arnold, Prosecuting Atty., Daviess County, Gallatin, for respondent.

Before SMART, P.J., and LOWENSTEIN and BERREY, JJ.

BERREY, Judge.

Gerald Pollock, Jr., appellant herein, was tried by the court and found guilty of the misdemeanor offense of "possess[ing] a deer taken in closed season" in violation of § 252.040, RSMo.1994, and/or 3 CSR 10–7.435 of the Missouri Conservation Commission. Appellant appeals his conviction and sentence of 30 days in jail and a $300.00 fine.

In early June of 1994, Vaughn Walters, a game warden with the Missouri Department of Conservation, received a telephone call from a person identifying himself as appellant. Walters testified he did not know appellant and had not previously spoken to appellant. According to Walters, appellant called Walters at home on June 7th and said "he had picked up a deer near I–35, a fawn, and he was wanting to keep it as a pet and wanted to know if I would issue him a permit and what to feed it." Walters advised appellant he would not issue a permit to appellant and that he would pick up the deer the following evening. Thereafter, Walters went to the home of appellant to pick up the deer. Appellant told Walters "the deer was gone, that he had put it on an airplane at Chillicothe Airport and sent it to Tennessee. . . . [s]o Vaughn Walters wouldn't get it."

Subsequently, on June 23, 1993, the warden went to appellant's home and "read him his Miranda warning." Appellant informed Walters he "picked the deer up on a road that connects Pattonsburg with Jameson, 100 yards away from the I–35 bridge as it crosses over." Walters requested appellant give him the deer, and appellant told him "he didn't know where it was . . .", that he had "sent it south with his girlfriend and didn't know where it was." At this juncture, a complaint was issued to appellant.[1]

The state called eight additional witnesses who had observed the deer fawn in question. Kathy Souders testified appellant had told her he "found a baby deer" and that he took it home because "its mom was dead." Teresa Hamilton observed appellant and the fawn at an MFA station in June. Hamilton testified, "It had a little collar around its neck with a leash on it, but he carried it in." Hamilton secured a 35mm camera and took photographs of the animal. The state's Exhibit 1 and 2 were identified by Hamilton as photographs of the fawn. Following an exchange between counsel and the court over whether or not the animal was a fawn, the exhibits were received.

The appellant makes great effort to discredit the witnesses' testimony regarding precisely what type of animal appellant possessed because the state did not establish

---

1. At oral argument, the state acknowledged it never obtained possession of the deer.

their proficiency in biology and related sciences. However, Shirley Harrington testified she had hunted deer for 16 years and had taken three deer over the years; she stated she knows a deer when she sees one. Harrington was the bartender at the Jamesport Tavern and knows appellant. She had seen appellant and the animal in her tavern but stated, "I don't know if the animal was with him." The animal was lying on the floor and wore a dog collar and a leash. Harrington said she told "whoever it belonged to" to take it somewhere else.

Victor Nelson was in the tavern shooting pool and observed the "deer, fawn" with a collar and attached rope. Nelson stated appellant was holding the fawn's rope. Two brothers, Steve and John Angenstein, were also in the tavern shooting pool. Steve observed the appellant with the fawn. The fawn wore a collar and was on a leash. John heard the fawn "bleat."

Appellant alleges the trial court erred when it overruled his motion for judgment of acquittal because the state failed to make a submissible case that he was unlawfully possessing a deer in closed season. He claims the elements of the charged offense involve hunting a deer during a closed season and that the term "taken" is intended to mean the killing or wounding of deer by some hunting act. By appellant's own admission and according to his sole point, the state's evidence "merely shows" that appellant caught and possessed an orphan fawn and refused to permit the warden to take and confiscate the animal from his possession.

■ The complaint issued the appellant alleged he was in violation of § 252.040, RSMo.1994, and/or 3 CSR 10–7.435 in that he "possess[ed] a deer taken in closed season." Section 252.040 provides in relevant part that:

No wildlife shall be pursued, taken, killed, *possessed* or disposed of except in the manner, to the extent and at the time or times permitted by such rules and regulations; and *any* pursuit, taking, killing, *possession* or disposition thereof, *except as permitted by such rules and regulations, are hereby prohibited* ....

(Emphasis added). Section 252.040 does not contain the word "hunt" but does include the words "taken" and "possessed." Pursuant to the Wildlife Code, applicable to violations under § 252.040, "possessed" means "[t]he actual and constructive possession and control of things referred to in this Code." 3 CSR 10–11.805(39). "Take" "[i]ncludes killing, trapping, snaring, netting or capturing in any manner, any wildlife...." 3 CSR 10–11.805(46).

■ The general requirements of 3 CSR 10–7.435 state, "Deer may be pursued, taken, killed, possessed or transported only as permitted in this rule." The bold-face caption of 3 CSR 10–7.435 reads as follows: "Deer: Seasons, Methods, Limits". According to the avowed purpose of 3 CSR 10–7.435:

Dates and limits for hunting deer in various parts of the state are established annually, based on the results of biological surveys. The goal is to provide recreational opportunities consistent with the maintenance or establishment of optimum numbers of deer. This rule establishes the open seasons and limits for deer hunting.

The rule then establishes the precise dates during which deer may be taken. According to the rule, deer may be taken only on particular dates during the fall and winter seasons. Appellant was found to be in possession of a deer in the month of June. In fact, he admitted this in his brief. There is no rule in the Wildlife Code permitting the possession of deer as in the instant case. Appellant therefore violated § 252.040 and 3 CSR 10–7.435.

■ In our review of this matter, all evidence is viewed in the light most favorable to the verdict; no consideration is given to contrary or adverse evidence. *State v. Davis*, 686 S.W.2d 503, 505 (Mo.App.1985). Appellate courts do not weigh the evidence but accept as true all evidence tending to prove guilt together with inferences that support the verdict. Contrary evidence and inferences are ignored. *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992). Our review is limited to a determination of whether sufficient evidence has been presented so that a reasonable juror might find defendant guilty beyond a reasonable doubt. *State v.*

*Grim,* 854 S.W.2d 403, 406 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). When the case is tried to the court, the same standard of review is used. *Sladek,* 835 S.W.2d at 310; *City of Kansas City v. Oxley,* 579 S.W.2d 113 (Mo. banc 1979).

■ Article IV, Section 40(a) of the Missouri State Constitution provides that "the control, management, restoration . . . [of] all wildlife resources of the state . . . shall be vested in the Conservation Commission." Section 252.030, RSMo.1994, provides that:

> 252.030. Wildlife of Missouri—ownership and title.—The ownership of and title to all wildlife of and within the state, whether resident, migratory or imported, dead or alive, are hereby declared to be in the state of Missouri. Any person who fails to comply with or who violates this law or any such rules and regulations shall not acquire or enforce any title, ownership or possessory right in any such wildlife; and any person who pursues, takes, kills, possesses or disposes of any such wildlife or attempts to do so, shall be deemed to consent that the title of said wildlife shall be and remain in the state of Missouri, for the purpose of control, management, restoration, conservation and regulation thereof.

The warden as an agent of the Conservation Commission was entitled to take the deer fawn into his possession for the state. Such an act did not constitute confiscation as appellant had no vested proprietary interest in the deer fawn, ownership of the fawn being in the State of Missouri pursuant to Article IV, Section 40a and § 252.030, RSMo. 1994. Further Rules of the Commission bearing on this matter are as follows. Rule 3 CSR 10–4.105 states:

> The rules of the Conservation Commission and statutory laws not inconsistent therewith shall constitute the Wildlife Code of Missouri, designated as the "Code." The rules of the Conservation Commission are severable and if any rule or portion of this Code is held invalid, the remainder shall not be affected. *The boldface caption for*

*any rule does not affect the meaning of the rule.* All authorized agents of the department and all duly constituted peace officers are authorized to enforce the provisions of this Code.

Rule 3 CSR 10–4.110 "prohibits the pursuit, taking, possession or any use of wildlife except as provided in the Code." It further provides:

> (1) No bird, fish, mammal or other form of wildlife, including their homes, dens, nests and eggs in Missouri shall be molested, pursued, taken, hunted, trapped, tagged, marked, enticed, poisoned, killed, transported, stored, served, bought, sold, given away, accepted, *possessed,* propagated, imported, exported or liberated to the wild in any manner, number, part, parcel or quantity, at any time, except as specifically permitted by these rules and any laws consistent with Article IV, sections 40–46 of the Constitution of Missouri.

In the instant case, appellant did not pursue or kill a deer. He did, however, take and possess and transport a deer. Appellant's reliance on the alleged failure of the complaint to properly charge him with the illegal possession of a deer is misplaced. As noted, the complaint alleged appellant was in violation of § 252.040, RSMo.1994, by possessing a fawn deer during closed season, which he was. The complaint also stated appellant was in violation of Missouri Conservation Commission rule 3 CSR 10–7.435. This rule provides the proper method of taking or possessing a deer. If a deer is taken or possessed contrary to this rule, the rule has been violated and the person so charged, upon sufficient evidence, may be found guilty.[2]

■ The charge against appellant was sufficient to advise him of the nature of offense with which he was charged, and the evidence was sufficient to sustain his conviction. *State v. Parks,* 657 S.W.2d 402, 403 (Mo.App.1983). The complaint alleged all elements of the crime intended to be charged. It contains all the essential elements as set out in the cited

---

**2.** Nothing herein is to be construed as conflicting with any portion of the Department of Conservation Code that authorizes the breeding or acqui-
sition of ungulates or licensed shooting areas of ungulates.

statute and regulation and clearly apprises appellant of the facts constituting the offense so that he could not be tried again for this offense. *State v. Hollis,* 750 S.W.2d 675 (Mo.App.1988) (citing *State v. Toney,* 680 S.W.2d 268, 278 (Mo.App.1984)); *Parks,* 657 S.W.2d at 403.

Appellant's Point is denied.

Affirmed.

All concur.