**STATE of Missouri, Plaintiff–Respondent,**

v.

**Samuel HOWARD and Steve Allen Bowen, Defendants–Appellants.**

**Samuel HOWARD and Steve Allen Bowen, Movants–Appellants,**

v.

**STATE of Missouri, Respondent–Respondent.**

**Nos. 18265, 19122 and 19123.**

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 28, 1995.

Motion for Rehearing or Transfer
Denied March 22, 1995.

Application to Transfer Denied
April 25, 1995.

Raymond L. Legg, Office of the State Public Defender, Columbia, for defendant-movant-appellant Samuel Howard.

Laura E. O'Sullivan, Asst. Public Defender, Kansas City, for defendant-movant-appellant Steve Allen Bowen.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent-respondent.

SHRUM, Chief Judge.

In December 1991, defendant Samuel Howard shot and killed Terry Easley and Billy Joe Luttrell during a fight involving the victims and another defendant, Steve Allen Bowen.[1] The state charged both Howard and Bowen with two counts of first degree murder and two counts of armed criminal action. Howard and Bowen defended on the basis that both homicides were justified as Howard acted in the justified defense of Bowen.

A jury rejected their defense and found Samuel Howard guilty of two counts of murder in the first degree, § 565.020.1, RSMo 1986, and two counts of armed criminal action, § 571.015, RSMo 1986. Because Howard was found to be a prior offender, the trial court imposed his punishment, § 558.016. He was sentenced to two terms of life imprisonment without possibility of parole and a ten-year term on one of the armed criminal action charges.[2] All sentences were ordered to be served concurrently.

The same jury found co-defendant, Steve Bowen, guilty on two counts of second degree murder, § 565.021.1, RSMo 1986, and two counts of armed criminal action, § 571.015, RSMo 1986. Bowen was likewise charged as and found to be a prior offender. The trial court sentenced Bowen to life imprisonment on each murder conviction and ten years on each armed criminal action count. The sentences were ordered to be served concurrently.

The direct appeal from Howard's and Bowen's convictions is No. 18265.

After he was sentenced, Howard filed a pro se motion under Rule 29.15[3] seeking to vacate his convictions and sentences. Ap-

---

1. When referring to Terry Easley and Billy Joe Luttrell individually we use their last names. Collectively, we refer to them as "victims." We also note that in the record Luttrell is spelled variously as "Luttrell," "Luttrull," and "Lutrell." We use Luttrell as that appears to be the spelling used by victim Luttrell's wife, Kathy.

2. Because of instructional error, the trial court sustained Howard's motion for new trial as to Count IV (armed criminal action during the murder of Billy Joe Luttrell). The state then dismissed Count IV as against Howard.

3. All references to rules are to Missouri Rules of Court, V.A.M.R.

pointed counsel later filed an amended Rule 29.15 motion for Howard. Following an evidentiary hearing, the motion court denied both motions. Howard's appeal from the denial of his motions is No. 19122.

Bowen also filed a pro se motion under Rule 29.15 seeking to vacate his convictions and sentences. Appointed counsel filed an amended Rule 29.15 motion on his behalf. After an evidentiary hearing, the motion court denied both motions. Bowen's appeal from the denial of his motions is No. 19123.

All appeals were consolidated per Rule 29.15(*l*).

In No. 18265, we affirm Howard's convictions for first degree murder and armed criminal action arising out of the death of Easley. We reverse his conviction for the murder of Luttrell and remand.

Also, in No. 18265 we affirm Bowen's convictions for second degree murder and armed criminal action arising out of the killing of Easley. We reverse his convictions for second degree murder of Luttrell and the armed criminal action underlying that conviction and remand those cases.

We affirm the postconviction appeals, No. 19122 and No. 19123.

## DIRECT APPEAL—NO. 18265

*Facts From Trial Testimony*

Although this record does not reveal the genesis of the dispute that led to the shootings, it does establish that on December 19, 1991, Bowen told Easley's brother, Robert, that he [Bowen] was being "pushed" by Easley and added, "I can't whip him but I'll shoot the m____ f____." The dispute continued when, on the morning of December 23, 1991, Bowen walked into Easley's home and there complained to those present about an incident earlier that morning involving Bowen's sister as she walked by Easley's house. Among the persons present during this confrontation were Luttrell and Easley, ultimately the victims.

The next encounter between Easley and Bowen occurred during the early evening of December 23 at the South End tavern in Kennett, Missouri. Earlier that afternoon,

Easley and certain of his friends and family had gone to the tavern to play pool and drink. According to Bowen, when he entered the tavern, he was struck and kicked repeatedly by Easley. He testified that the tavern assault occurred without warning and without provocation on his part.

After the tavern fight ended, Bowen went to the home of his brother, Dennis Bowen. Present at the Dennis Bowen house were Howard, Dennis and Daniel Bowen, and Rick Wadley. While all were present, Bowen told Howard about the incident at the South End tavern. At trial, Bowen testified, "I wanted him [Howard] to go with me because Bear [Luttrell] was there and I wanted him [Howard] to keep Bear [Luttrell] off me while I whipped Terry [Easley]." Immediately, Howard and Bowen left together in Bowen's car in search of Easley. Dennis Bowen, Donald Bowen, and Rick Wadley followed in Bowen's pickup truck. Bowen's car contained a club or stick and his truck that followed contained the rifle that was ultimately used to kill the victims.

The drivers of the two vehicles first went to the South End tavern but found that Easley and his group had left. They then drove to Robert Easley's shop but found no one. Continuing to search for Easley, Bowen and his passenger Howard drove to Easley's house. The other group members followed in Bowen's truck. As the Bowen vehicles arrived at Easley's house, Easley and Luttrell came out and confronted Bowen and Howard in the front yard. Kathy Luttrell, viewing the initial encounter from the Easley home, testified that when the two people in the car first got out, they were armed with clubs. She heard those two yell, "[O]dds are even. Let's get it on." Thereupon fighting between the victims and the co-defendants commenced. Easley's wife, Bridgett, testified that soon after the fight started, she heard Howard say, "[W]e can do it now. We can kill them all now." Upon hearing that, Bridgett testified she went back into the house to get a stove poker, and it was when she returned to the front yard area with the stove poker that she first heard shots and saw that both victims had been hit.

The undisputed evidence was that Howard shot both victims with the .22 caliber rifle taken from Bowen's truck. Easley was shot twice in the back, three times in the facial area, and twice in the arm. Luttrell was shot in the forehead and left hand. A member of the state highway patrol, Steven Niederkorn, testified that Howard told him in a post-shooting interview that he had stopped shooting because the gun jammed. Howard denied making such statement and testified the patrolman jammed the gun after it was recovered.

Both Bowen and Howard testified in their defense. They testified that initially the fighting was only between Bowen and Easley and no weapons were involved. It was only after Bowen knocked Easley down that Luttrell entered the affray by grabbing Bowen from behind. They testified that Luttrell then produced a knife, Easley obtained a club or piece of firewood, and while they had Bowen subdued, they repeatedly threatened to kill him. As the threats were made, Luttrell alternately placed the knife near Bowen's throat and genital area in a threatening manner. Bowen testified he asked to be let go and told the victims he was ready to quit, but they continued with their threats and brandishing of weapons. Believing that Bowen's life was in danger, Howard shot both victims.

After the shooting, Howard, Bowen, and their group immediately fled the scene. Howard and Bowen threw the rifle into a road side ditch and then left Dunklin County. During their flight, Bowen washed blood from his car, clothing, and himself. Approximately twenty-four hours after the shooting, Bowen and Howard returned to Dunklin County and surrendered to local law enforcement officers.

We recite additional facts later when essential to an understanding of Defendants' various points on appeal.

## HOWARD'S DIRECT APPEAL— NO. 18265

*Sufficiency of the Evidence*

In his first point, Howard challenges the sufficiency of the evidence to support his convictions. Specifically, he contends that the state's evidence was insufficient to prove that he deliberately killed Easley and Luttrell. Howard argues that there was no evidence he arrived at the scene of the shooting intending to kill anyone, and says that "[t]he credible testimony at trial showed that [Howard] obtained a gun only after the fight had started."

■ The standard for appellate review of the sufficiency of the evidence to support a criminal conviction is well established.

" 'On review, [an appellate court] accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary. [Citation omitted.] In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.' "

*State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993) (quoting *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989)). Moreover, there must be evidence to support each element of the offense charged. *State v. Munson*, 714 S.W.2d 515, 521[4] (Mo. banc 1986).

■ To sustain a conviction for murder in the first degree, the prosecution must prove beyond a reasonable doubt that the accused "knowingly cause[d] the death of another person after deliberation upon the matter." § 565.020.1, RSMo 1986; *State v. Watson*, 839 S.W.2d 611, 616[8] (Mo.App. 1992). "Deliberation" is defined as "cool reflection for any length of time no matter how brief." § 565.002(3), RSMo 1986. The actor need not brood over his actions for a long period of time. *State v. Roe*, 845 S.W.2d 601, 606 (Mo.App.1992). Deliberation may be proved by indirect evidence and inferences reasonably drawn from circumstances surrounding the killing. *State v. Turner*, 623 S.W.2d 4, 7[3] (Mo. banc 1981).

■ Here, there was a clear basis for the jury to find the element of deliberation as submitted in the instructions. First, there is the testimony of Bridgett Easley that when she first walked out on the porch, she heard

Howard say, "[W]e can do it now. We can kill them all now." She testified that when Howard voiced his threat to kill, he did not have a weapon in his hands but that sometime later she saw him take a rifle out of the truck. It was inferable from such evidence that there was a common plan to kill victims Easley and Luttrell and that it was formulated prior to the fight. After hearing Howard's remarks, Bridgett went back in the house, got a stove poker, and came back out on the porch. Shots were not fired until Bridgett ran out into the yard with the stove poker. The jury could reasonably have found that Howard coolly reflected on his acts at a minimum from the time of his statement until he commenced firing the rifle. The determination of Bridgett Easley's credibility and the weight and value to be given her testimony were matters within the province of the jury and are not for review on appeal. *State v. Jenkins,* 776 S.W.2d 59, 62[1] (Mo.App.1989).

 Deliberation could also be inferred from the number, severity, and location of wounds to the victims. *See State v. Barnes,* 740 S.W.2d 340, 344 (Mo.App.1987); *State v. Hurt,* 668 S.W.2d 206, 215 (Mo.App.1984). In this case numerous shots were fired into the head and back of victim Easley and into the head and arm of victim Luttrell. Howard admitted that the number of shots fired was limited solely because the rifle jammed. Additionally, the inference of deliberation is strengthened by the fact that Howard and Bowen left the scene immediately after the shooting without checking on the victims and procuring aid for them, *see Hurt,* 668 S.W.2d at 215, and both then disposed of the weapon used in the shooting. *See State v. Endres,* 698 S.W.2d 591, 594 (Mo.App.1985).

After thorough review of the record, we find the evidence was sufficient to survive Howard's motion for judgment of acquittal and go to the jury. Point denied.

*Instructional Error—Plain Error Review*

In Point II, Howard contends that the trial court plainly erred in submitting Instructions No. 4, 10, and 16 to the jury.

Instruction No. 4 submitted the defense relied on by Howard for killing Luttrell, i.e., "Justification: Use of Force in Defense of Third Parties," MAI–CR.3d 306.08. In part, it directed the jury as follows:

"If under the circumstances as defendant Samuel James Howard reasonably believed them to be, Steve Allen Bowen was not the initial aggressor in the encounter with Billy Joe Luttrull or, if he was, that Steven Allen Bowen had clearly indicated to Billy Joe Luttrull his withdrawal from the encounter, and if the defendant Samuel James Howard reasonably believed Steve Allen Bowen was in imminent danger of death or serious physical injury from the *unlawful acts of Terry Easley,* and he reasonably believed that the use of deadly force was necessary to defend Steven Allen Bowen, then he acted in lawful defense of another person." (Emphasis ours.)

Howard says, correctly so, that since this instruction dealt with his claim of justification for killing Luttrell, the italicized phrase should have referred to the *unlawful acts of Luttrell,* not the unlawful acts of Easley.[4] He argues that the erroneous reference to Easley's unlawful acts "confused and misled the jury . . . [and] denied [Howard] his right to have the jury consider his lawful defense to the charge of murdering [victim Luttrell]." For the reasons stated later in this opinion, we agree.

 Howard also observes that Instructions No. 10 and 16, the verdict directing instructions for first degree murder, do not contain a cross-reference to the separate justification defense instructions, specifically to Instructions No. 3 and 4. It is necessary that the verdict directing instructions include

4. Another part of Instruction No. 4 also told the jury that:

"Evidence has also been introduced of threats made by Steve Allen Bowen against Billy Joe Luttrull. You may consider this evidence in determining who was the initial aggressor in the encounter between them."

Howard is correct in saying that there was no evidence presented at trial of threats made by Bowen against Luttrell. Because we find plain error elsewhere in Instruction No. 4, we need not decide whether this part of the instruction, by itself, rises to the level of plain error.

a cross-reference to each special negative defense upon which a special instruction has been given. *See State v. Griffin,* 859 S.W.2d 816, 820 (Mo.App.1993); MAI–CR.3d 304.02, Notes on Use 11 sub. p. 2. *See also* MAI–CR.3d 306.08, Notes on Use 2. Failure to provide cross-references as required by the Notes on Use is error, the prejudicial effect of which is to be judicially determined. *Griffin,* 859 S.W.2d at 820; *State v. Cook,* 727 S.W.2d 413, 415 (Mo.App.1987). *See* Rule 28.02(c).

Howard concedes that his Point II claims of error were not preserved for appellate review as only a general objection to these instructions was made at trial and the claims were not specifically stated in his motion for new trial. He requests that we examine his second point under the plain error standard of Rule 30.20.[5]

▮▮▮ When seeking plain error review a defendant must show "manifest prejudice affecting his substantial rights" as a prerequisite to obtaining relief. *State v. Hornbuckle,* 769 S.W.2d 89, 93[2] (Mo. banc 1989); *State v. Hopkins,* 841 S.W.2d 803, 804 (Mo. App.1992). Appellate courts use the plain error rule sparingly and limit its application to those cases where there is a strong, clear demonstration of manifest injustice or miscarriage of justice. *State v. Collis,* 849 S.W.2d 660, 663[1] (Mo.App.1993). Instructional error is rarely plain error. *State v. Brokus,* 858 S.W.2d 298, 302 (Mo.App.1993). More than mere prejudice must be shown in such a case. *Id.*

For instructional error to rise to the level of plain error, the trial court must have so misdirected the jury as to cause manifest injustice or a miscarriage of justice. *State v. Parkus,* 753 S.W.2d 881, 888[13] (Mo. banc 1988). The determination of whether plain error exists must be based on a consideration of the facts and circumstances of each case. *State v. Cline,* 808 S.W.2d 822, 824[5] (Mo. banc 1991).

With the above principles in mind we examine Howard's second point. We do so, however, by separate discussions designated Point II "A" and "B".

### Point II A

▮▮▮ Under § 563.031, RSMo Supp. 1993, Howard had the "burden of injecting the issue" of defense of another person.[6] *See* MAI–CR.3d 306.08, Notes on Use 2. This meant that he had the burden of submitting evidence to support that defense. § 556.051, RSMo 1986. Based on this record, it is clear that Howard met that burden. Once Howard met his burden on this issue, the prosecution then had the burden to prove beyond a reasonable doubt that the killing of Luttrell was not justified. *See State v. Fincher,* 655 S.W.2d 54, 58 (Mo.App.1983); § 556.051, RSMo 1986.[7] Thus, it was an essential element of the state's case to prove that Luttrell never committed "unlawful acts" that placed Bowen "in imminent danger of death or serious physical injury," yet Instruction No. 4 never placed that proposition before the jury for determination in any fashion. We have

**5.** In pertinent part, Rule 30.20 reads: "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

**6.** In pertinent part, § 563.031, RSMo Supp.1993, reads:

"1. A person may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent he reasonably believes such force to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force by such other person....

....

2. A person may not use deadly force upon *another person under the circumstances specified in subsection 1 of this section unless he reason-*

*ably believes that such deadly force is necessary to protect himself or another against death [or] serious physical injury....*

....

4. The defendant shall have the burden of injecting the issue of justification [in the use of force in defense of persons]." (Emphasis added.)

**7.** § 556.051 reads: "When the phrase "The defendant shall have the burden of injecting the issue" is used in the code, it means

(1) The issue referred to is not submitted to the trier of fact unless supported by evidence; and

(2) *If the issue is submitted to the trier of fact any reasonable doubt on the issue requires a finding for the defendant on that issue.*" (Emphasis ours.)

no basis upon which we can find that the jury made any finding with respect to that question. *See Brokus,* 858 S.W.2d at 303.

Under the circumstances, we believe a fundamental right of Howard was violated by Instruction No. 4, resulting in a manifest injustice and a miscarriage of justice. *See State v. Harnar,* 833 S.W.2d 25, 28 (Mo.App. 1992). We find that the omission from Instruction No. 4 of the requirement that the jury consider Luttrell's "unlawful acts" did constitute plain error. Consequently, Howard's conviction for the killing of victim Luttrell must be reversed.

### Point II B

We turn now to the question of whether manifest injustice and a miscarriage of justice resulted from the fact that verdict director No. 10 did not contain a cross-reference to the separate justification defense instruction, specifically Instruction No. 3.[8]

■ Clearly it is error not to cross-reference the instructions. *Cook,* 727 S.W.2d at 415. Moreover, failure to cross-reference is error that is not necessarily cured by giving a separate "defense of third person" instruction. *See State v. Feltrop,* 803 S.W.2d 1, 11[21] (Mo. banc 1991); *Cook,* 727 S.W.2d at 415. However, lack of cross-referencing does not automatically mandate reversal. The prejudicial effect of the error is to be judicially determined. *Griffin,* 859 S.W.2d at 820.

■ When making a determination, if there is prejudicial error in a particular instruction, we are entitled to consider the facts and all instructions together. *State v. Ward,* 745 S.W.2d 666, 670[6] (Mo. banc 1988); *State v. Mallory,* 851 S.W.2d 46, 48 (Mo.App.1993). Essentially all the evidence in this case was devoted to the question of whether, under the circumstances, Howard was justified in using deadly force to defend Bowen. From opening statements onward, this jury could not help but know that deciding Defendants' guilt or innocence required them to decide the justification issue. In his opening statement, defense counsel told the jury that Howard "shot them" to save his nephew Bowen. When Howard testified, he admitted shooting both victims, but asserted repeatedly that he did so only because it was necessary to save his nephew, Bowen. Other defense witnesses offered testimony that either directly corroborated Howard's version of the shooting or served as background in support of his justification defense. No other defense or justification claim was presented.

During closing argument, defense counsel directed the jury's attention to the "defense of a third party" instruction, and told them, "study that, it fits like a glove in this case." Also, he argued, "[a]quit Samuel Howard for defending his nephew" and "[w]hen you go into that jury room ... go through that defense of a third party instruction." Although not evidence, the opening statement and closing argument served to focus the jury to the justification defense and the instructions that explain it.

Additionally, Instruction No. 3 told the jury that in Missouri, "the use of force, including the use of deadly force, to protect another person from harm is lawful in certain situations." In multiple paragraphs it described the legal principles of the defense and explained what evidence the jury could consider in applying those principles. Among its many paragraphs, it instructed the jury as follows:

"On the issue of the defense of another person as to Count I in this case, your are instructed as follows:

If under the circumstances as ... Howard reasonably believed them to be, ... Bowen was not the initial aggressor in the encounter with Terry Easley or, if he was, that ... Bowen had clearly indicated to Terry Easley his withdrawal from the encounter, and if ... Howard reasonably believed ... Bowen was in imminent danger of death or serious physical injury from the unlawful acts of Terry Easley and he reasonably believed that the use of deadly force was necessary to defend ... Bowen,

8. Our conclusion that plain error resulted from the giving of Instruction No. 4 renders moot any challenge to Instruction No. 16.

then he acted in lawful defense of another person.

The State has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful defense of another person. Unless you find beyond a reasonable doubt that the defendant did not act in lawful defense of another person, you must find the defendant not guilty under Count I."

Another instruction, Howard's converse [No. 11], focused the jury to the state's burden of proving beyond a reasonable doubt that Howard did not act in lawful defense of Bowen. In pertinent part it reads:

"Further, if you find and believe that the State has not proven beyond a reasonable doubt that ... Howard did not act in lawful defense of ... Bowen, you must find ... Howard not guilty under Count I of first degree murder as submitted in Instruction No. 10."

■ Appellate courts presume that the juries follow their instructions. *State v. Shurn,* 866 S.W.2d 447, 465[57] (Mo. banc 1993). We also presume that the jury understood the words used in the instructions when they arrive at their verdict. *State v. Lay,* 427 S.W.2d 394, 400[3] (Mo.1968).

■ Upon this record, we see little potential for the jury being misdirected sufficiently to cause a miscarriage of justice when all the instructions are read together, especially in light of the lengthy record in which substantially all the evidence focused on a single defense. *Mallory,* 851 S.W.2d at 48. Reading the instructions together in the light of the facts here presented, no reasonably attentive and intelligent juror could have been misled or confused by the failure to include in Instruction No. 10 a cross-reference to Instruction No. 3. *State v. Livingston,* 801 S.W.2d 344, 349[5] (Mo. banc 1990); *State v. DeJournett,* 868 S.W.2d 527, 532[7] (Mo.App.1993).

We also consider defense counsel's failure to object to Instruction No. 10 as an indication that this jury was not so misdirected as to cause a manifest injustice. If the defect was not readily apparent to alert counsel preparing to argue his case, there is little likelihood that the jury was confused or misled. *See Livingston,* 801 S.W.2d at 349.

Finding no manifest prejudice to Howard that affects his substantial rights as regards Instruction No. 10, the second claim of error in his second point fails.

*Evidentiary Ruling by Trial Court—Plain Error Review*

In his third point, Howard contends that the trial court committed plain error when it sustained the prosecutor's objection to testimony injected by Howard as he was being cross-examined. The testimony and the context in which it was proffered and refused, are as follows:

"Q. [Prosecuting Attorney]: So you used to like to fight?

A. [Howard]: No, I never liked it. I never liked to fight.

Q. Well, you used to get in fights. How's that?

A. I've had a few in my life. I never fought dirty.

Q. I'm sorry?

A. I didn't ever fight dirty. In other words, I never used knives or clubs on nobody.

Q. How about a gun?

A. No. *Terry Easley told me he had killed a man in Arkansas.*

MR. SOKOLOFF [Prosecuting Attorney]: Your Honor, I'm going to object to that and ask that it be stricken—

THE COURT: Sustained." (Emphasis ours.)

In claiming that the italicized testimony was admissible, Howard relies on *State v. Waller,* 816 S.W.2d 212, 216[2] (Mo. banc 1991):

"Where justification is an issue in a criminal case, the trial court may permit a defendant to introduce evidence of the victim's prior specific acts of violence of which the defendant had knowledge, provided that the acts sought to be established are reasonably related to the crime with which the defendant is charged."

Although he concedes this issue was not preserved for appellate review, Howard

seeks plain error review saying, "the trial court's refusal to allow [him] to present this evidence to the jury so substantially impacted upon [his] rights that manifest injustice or a miscarriage of justice will result if not corrected."

 We disagree. We find no error, plain or otherwise, resulting from the trial court's exclusion of this evidence. Under the *Waller* rule, a trial court is not required to admit all evidence proffered about a victim's prior specific acts of violence. To the contrary, *Waller* says, "To the extent that this Court has changed the rule, it vests new discretion in the trial court." 816 S.W.2d at 216. "In application of the new rule, courts must exercise caution." *Id.* "The defendant must lay a proper foundation before the evidence was admitted." *Id.*

In this case, Howard failed to lay any foundation for this evidence. Thus, even if we assume that the trial court understood the reason for Howard's non-responsive answer—an assumption that the record does not support—no abuse of discretion is shown because of the absence of the necessary foundation for its admission.

The transcript excerpt reveals that Howard attempted to place this evidence before the jury by a non-responsive answer as the prosecutor cross-examined him about *his* propensity for violence. Viewed in context, it is not speculative to say the state objected because Howard's answer was non-responsive, not because of the substance of the evidence. It is equally clear that the trial court excluded the testimony because it was non-responsive and was never called upon to decide if it was evidence admissible pursuant to *Waller.*

Finding no error, plain or otherwise, Howard's third point fails.

### Closing Argument—Plain Error Review

For his fourth point, Howard contends that the trial court plainly erred in overruling his objection to the prosecutor's final argument where he claimed that defense counsel's job was to divert the jury's attention from the real issues. Once again, Howard concedes this point was not properly preserved by appellate review and, so, seeks plain error review under Rule 30.20.

The following are details of the closing argument, in the context in which it arose, and defense counsel's objection:

"[Mr. Sokoloff, prosecuting attorney]: Mr. Hilfiker [defense counsel] is going to have an opportunity to argue to you now and I'm going to come back. *Mr. Hilfiker's job here is to divert your attention from the real issues.*

MR. HILFIKER: Your honor, I object to him saying what my job is. I've got mine and he's got his.

THE COURT: Overruled. This is merely argument. Proceed.

MR. SOKOLOFF: Thank you, Your Honor. He's going to talk about the South End and this fight down at the South End. It doesn't have anything to do with this except to establish motivation. The motive about why they did this. Doesn't have anything to do with this. They weren't still there. This was not a progression. They didn't stay there and fight.

What you've got here are two men who are dead. One of them was shot seven times, twice in the back. The other one shot once or twice in the forehead, right square in the forehead (indicating), at their own house. Those are the real issues in this case. Thank you." (Emphasis ours.)

Howard asserts that the italicized portion of the foregoing argument of the prosecutor "constituted an improper and unprovoked attack on the integrity or professional ethics of defense counsel" and had such "a decisive impact on the jury's verdict" as to rise to the level of manifest injustice and result in a miscarriage of justice.

 It is well settled that personal attacks on defense counsel by a prosecutor are improper and objectionable. *State v. McGee,* 848 S.W.2d 512, 514[5] (Mo.App. 1993). Closing argument statements, made without basis in the record, that defense counsel acted improperly are error as they degrade the defense. *State v. Greene,* 820 S.W.2d 345, 347[1] (Mo.App.1991). "Nonetheless, we have not adopted a *per se* rule of mandatory reversal in all cases in which ob-

jectional comments are made by a prosecutor." *State v. Roberts*, 838 S.W.2d 126, 131 (Mo.App.1982). Trial courts are given wide discretion in the control of jury arguments and their rulings will be reversed only for abuse of discretion where the argument is plainly unwarranted and clearly injurious. *State v. Herron*, 863 S.W.2d 6, 8[5] (Mo.App. 1993).

To support his argument, Howard relies primarily on *Greene*, 820 S.W.2d 345; *State v. Burnfin*, 771 S.W.2d 908 (Mo.App.1989); and *State v. Spears*, 821 S.W.2d 537 (Mo.App. 1991).[9] We do not, however, find those cases persuasive. The prosecutorial impropriety claimed in the case at bar does not rise to the level of egregiousness found in *Greene* and *Burnfin*. The prosecutor in *Greene* called defense counsel a liar in front of the jury. The trial court sustained defense counsel's objection barring further argument but refused to instruct the jury to disregard the prosecutor's statement. *Greene*, 820 S.W.2d at 346–47. The prosecutor in *Burnfin* not only conducted a personal attack on defense counsel, but made many other improper arguments to the jury. *Burnfin*, 771 S.W.2d at 912–13. Plain error was found because "of the multiple errors in the prosecutor's argument being cumulative and egregiously prejudicial." *Id.* The *Spears* court found closing argument which was similar to that made in this case to be improper but ruled that no prejudice resulted. 821 S.W.2d at 542[5, 6]. *Spears* is also distinguishable as the error there was properly preserved.

Here, we cannot say that the prosecutor's comments implied improper conduct on the part of defense counsel. Indeed, when he made the objection, defense counsel did not claim that the prosecutor's remarks constituted a personal attack on him but treated the argument as defining their respective roles as advocates, i.e., "I object to him saying what my job is. I've got mine and he's got his." After the court overruled Howard's objection, the prosecutor continued to discuss the case but made no further reference to defense counsel or any wrongdoing on the part of defense counsel. Nowhere else in the record did the prosecutor explicitly or implicitly accuse defense counsel of improper conduct. Under the circumstances, we are left unpersuaded that the trial court erred in its ruling.

However, even if the prosecutor's remarks are viewed as improper, they do not rise to the level warranting reversal. "[B]rief, isolated, nonrepetitive remarks of state counsel in closing remarks rarely call for plain error relief." *State v. Higgins*, 619 S.W.2d 94, 96[5] (Mo.App.1981). We do not find that the remarks of the prosecutor complained of here could have possibly had a decisive effect on the jury. Accordingly, we find no basis for finding that these challenged remarks demonstrated a strong and clear showing that manifest injustice or a miscarriage of justice resulted from this argument. Point IV is denied.

*Overruling "For Cause" Challenge to Venireperson*

In his fifth point, Howard contends that the trial court plainly erred in overruling his challenge for cause to venireperson Thomas Winchester. The challenged venireperson did not serve on the jury, however, because he was removed as the result of Howard's preemptory strikes. The state argues that because of § 494.480.4, RSMo Supp.1993, and cases interpreting it, we need not review Howard's claim regarding this venireperson.[10] We agree.

Under the present version of § 494.480.4, failure to strike an unqualified

**9.** With the exception of *State v. Moomey*, 581 S.W.2d 899 (Mo.App.1979), none of the other cases cited by Howard involve closing arguments that accused defense counsel of improper acts. In *Moomey*, the appellate court found no error in the prosecutor's argument, saying that defense counsel had misconceived the prosecutor's argument as implying that he had manufactured a defense for his client.

**10.** As of August 28, 1993, § 494.480 was amended to include the following:
"4. The qualifications of a juror on the panel from which peremptory challenges by the defense are made shall not constitute a ground for the granting of a motion for new trial or the reversal of a conviction or sentence unless such juror served upon the jury at the defendant's trial and participated in the verdict rendered against the defendant."

venireperson for cause is not reversible error of law unless the unqualified juror actually served on the final jury. *State v. Wise,* 879 S.W.2d 494, 512 n. 9 (Mo. banc 1994). As § 494.480.4 is procedural in nature, its retroactive application does not constitute an *ex post facto* violation. *State v. Lawson,* 876 S.W.2d 770, 777[15] (Mo.App.1994); *State v. Wings,* 867 S.W.2d 607, 609[4] (Mo.App. 1993). Based on current law, defendant Howard is not entitled to appellate relief as to the venireperson challenged who did not serve. Point denied.

*Sustaining State's "For Cause" Challenge To Venireperson*

For his sixth point, Howard contends that we should review under the plain error standard the trial court's sustention of the state's challenge for cause to venireperson Regina Neel. He argues "the record does not disclose that Neel was unable to be fair and impartial or that she was otherwise statutorily disqualified from serving." Howard asserts that he was prejudiced "because the practical consequence was to award the state an additional preemptory challenge."

■■■■ A criminal defendant is entitled to a full panel of qualified jurors before he must use his peremptory challenges. *State v. Wheat,* 775 S.W.2d 155, 158 (Mo. banc 1989). Generally, an accused has no right to any specific juror or to representation on the jury of particular viewpoints. *Lockhart v. McCree,* 476 U.S. 162, 177–79, 106 S.Ct. 1758, 1766–68, 90 L.Ed.2d 137 (1986).

■■■ Howard does not claim that he was not provided a full panel of qualified jurors from which he was permitted to expend his peremptory challenges. Rather, he, in effect, says he was prejudiced because Regina Neel was not included on the panel from which the state and defendants exercised their rights to peremptorily strike jurors. That argument was made and rejected in *State v. Gray,* 812 S.W.2d 935 (Mo.App.1991).

"[I]n cases other than those in which the range of punishment includes the death penalty, the usual rule is 'that error may not be predicated on the sustaining of a challenge for cause if a full panel of quali-

fied jurors is tendered for peremptory challenge.' "

*Id.* at 938 (quoting *State v. Jones,* 749 S.W.2d 356, 360 (Mo. banc 1988)). The fact that the full panel of qualified jurors from which Howard expended his peremptory challenges did not include Regina Neel did not prejudice Howard. *Gray,* 812 S.W.2d at 938. We find no basis for saying that the exclusion of Regina Neel as a prospective juror resulted in a manifest injustice or miscarriage of justice. Point VI is denied.

### HOWARD'S POSTCONVICTION APPEAL—NO. 19122

Howard timely filed a *pro se* motion for postconviction relief pursuant to Rule 29.15. Counsel was appointed for Howard and he then filed an amended pro se motion. Following an evidentiary hearing, the motion court denied Howard's request for postconviction relief. This appeal followed.

■■■ Our review of a Rule 29.15 motion is limited to determining whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *State v. Ervin,* 835 S.W.2d 905, 928[42] (Mo. banc 1992). The finding and conclusions are clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Id.* In reviewing the motion court's determination with respect to ineffective assistance of counsel, the focus is on (1) counsel's performance, and (2) if that performance is deficient, whether prejudice resulted from counsel's breach of duty. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Sanders v. State,* 738 S.W.2d 856, 857–58 (Mo. banc 1987). Counsel is presumed competent. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

"Prejudice is shown by proof that, but for counsel's unprofessional errors, there was a reasonable probability that the result would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Prejudice is not presumed from a showing of deficient performance of counsel, but must be affirmatively proved. *Id.* at 693, 104 S.Ct. at 2067. It is not enough for the

defendant to show that the errors had some conceivable effect on the outcome of the proceeding, *Id.;* rather, defendant must show that there is a reasonable probability that, but for the errors by counsel, the fact finder would have had a reasonable doubt respecting punishment. *Id.* at 694–95, 104 S.Ct. at 2068–2069. If it is simpler to dispose of a claim of ineffectiveness on the ground of lack of sufficient prejudice, that course should be followed. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069. 'There is no reason for a court ... to address both components of the inquiry if the defendant makes an insufficient showing on one.' *Id.* 'The movant has the burden of proving his grounds for relief by a preponderance of the evidence.' Rule 29.15(h)."

*Sidebottom v. State,* 781 S.W.2d 791, 797[6–9] (Mo. banc 1989).

It is within these parameters that Howard's contentions are considered.

### Conflict of Interest—Ineffective Assistance of Counsel Claim

In his postconviction motions, Howard contended his trial counsel was ineffective because his joint representation of both him and Bowen "created a conflict of interest that was prejudicial to [Howard]." He alleged that joint representation denied him the opportunity to explore a plea bargain for a reduced charge in exchange for his cooperation in the prosecution of Bowen. Further, Howard alleged that plea offers were extended to him and Bowen, but they were conditioned on acceptance of the plea by both parties. Howard concluded by pleading that as Bowen was never willing to accept a plea offer, he could not do so either in light of the joint representation.

After hearing the evidence, the motion court found that Howard "[d]id not carry his burden of showing an actual conflict of interest by the trial attorney representing him and his nephews." [11] That ruling forms the basis for Howard's seventh point on appeal in which says the motion court erred because the record showed that trial counsel "was

burdened by an actual conflict of interest" in representing both Howard and Bowen. Howard argues that a "conflict-free attorney *may well* have been able to negotiate a plea agreement [for Howard] to second degree murder with a sentence acceptable to [Howard], or even a plea offer of voluntary manslaughter." (Emphasis ours.) He insists that co-defendant Bowen's "flat refusal of the plea and the nature of the plea foreclosed that possibility." As we understand it, Howard's claim hinges in large measure on his assertion that any plea bargain offered was contingent on all co-defendants pleading guilty to second degree murder and because of the joint representation, he was foreclosed from engaging in separate plea negotiations.

■■■■ To establish a claim of ineffective assistance of counsel because of an alleged conflict of interest, a movant must show that an actual conflict existed and that the conflict affected the manner in which counsel handled his case. *Johnson v. State,* 772 S.W.2d 894, 897 (Mo.App.1989) (citing *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). "Representation of co-defendants does not create a *per se* conflict of interest." *Johnson,* 772 S.W.2d at 897[3]. A movant has the burden of proving his counsel acted in such a way that was detrimental to movant's interests. *Ruff v. State,* 815 S.W.2d 460, 464 (Mo.App.1991).

"A contention that counsel had a conflict of interest, without benefit of explicative facts or evidence that counsel favored one client at the expense of another, affords no basis for relief.... Such a claim cannot be sustained on the basis of speculation, and will not be upheld absent evidence of actual conflict of interest or evidence pointing to a substantial possibility of conflict of interest.... In order to evidence a conflict of interest, something must have been done by counsel or something must have been foregoing by counsel and lost to defendant, which was detrimental to the interests of defendant and advantageous to another."

---

11. Originally, Samuel Howard and his nephews Steven Bowen and Dennis Bowen were jointly charged in this case. At or near the time of trial, the state dismissed the charges against Dennis Bowen.

*State v. Abbott,* 654 S.W.2d 260, 274[15–17] (Mo.App.1983) (citations omitted).

 In this case, Howard has failed to meet his burden of showing an actual conflict of interest. Both Howard and his trial attorney testified that the only plea offer ever received from the prosecutor was for second degree murder. At a pre-trial hearing regarding the joint representation, Howard testified:

"MR. HILFIKER: There's never been any plea bargain offers to you that you would accept; have there?

DEFENDANT SAMUEL HOWARD: No, sir."

At the postconviction hearing, trial counsel testified that he and Howard had proceeded in the belief that if Howard was guilty of anything, it was manslaughter, not second degree murder. He testified that Bowen's consistent position throughout was that he had killed no one and should not plead guilty to anything. According to trial counsel, neither Howard nor Bowen ever gave any consideration to pleading guilty to second degree murder or to testifying against one another. Counsel also testified that the second degree murder plea offers were not contingent on all co-defendants pleading guilty to that charge. Howard's testimony was, for the most part, contradictory to that of trial counsel on this issue. However, we give deference to the motion court's superior opportunity to judge the credibility of witnesses. *State v. Twenter,* 818 S.W.2d 628, 635[8] (Mo. banc 1991).

Howard argues on appeal that "[b]ut for Bowen's refusal to consider the plea offer, [Howard] might have pursued it." That argument clearly falls within the realm of prohibited speculation and is refuted by the record. *See Ruff,* 815 S.W.2d at 464. At the postconviction hearing, Howard acknowledged that neither before trial nor during trial did he tell trial counsel that he wanted to negotiate separately from Bowen or wanted to explore a separate plea bargain. According to trial counsel, the attitude of Howard and Bowen throughout was, "[w]e have to do it together. We're involved together. We're going to stick with it together as a unit." Howard's admissions coupled with trial counsel's testimony amply demonstrates

the absence of merit to Howard's seventh point. The point is denied.

*Failure to Present Evidence of Victims' Specific Violent Acts*

In his eighth point, Howard contends his trial counsel was ineffective because he "failed to present evidence of [the victims'] prior specific acts of violence of which [Howard] was aware, including [Easley's] statement to [Howard] that he had killed a man in Arkansas." He argues that his trial lawyer was made aware of the prior specific violent acts of the victims, that under *Waller,* 816 S.W.2d 212, such evidence was admissible, and that failure by his trial lawyer to introduce such evidence deprived him of his constitutionally protected right to effective assistance of counsel.

At his motion hearing, Howard testified that he had told trial counsel of his pre-existing knowledge of victim Easley's violent acts. Specifically he testified he told his trial lawyer that victim Easley had beaten Michael Wayne Dowdy and hit James Moore, knocking his teeth out. His other testimony on this issue took the following form:

"Q. [By Motion Counsel]: Larry Turner?

A. [Howard]: Yeah.

Q. Is that one you discussed with [trial counsel]?

A. Larry—Larry Jack Turner. One of the Conder boys, Gary—Gary Conder, I believe it was, had been shot at and beat up by the—by the Easleys. And just lots of different people...."

Another witness, Dennis Bowen, testified that during the time he was a co-defendant, he told trial counsel about numerous violent acts committed by the victims, Easley and Luttrell. He testified that he told trial counsel about victim Easley beating on Michael Dowdy and James Moore. Additionally, he testified that trial counsel had been told of an incident in which victim Easley beat up Larry Jack Turner with a beer bottle and victim Luttrell beat up Tim Champ.

Contrarily, trial counsel's testimony was that he had never heard of Michael Dowdy, James Moore, Larry Jack Turner, or Tim

Champ and had not been asked to interview them or call them as witnesses. Moreover, trial counsel testified that as "specific acts of violence committed by ... Easley and ... Luttrell ... was an issue in the case ..., [he] would remember these names if they had been brought to [his] attention." Counsel stated he interviewed "any potential witnesses that Steve Bowen or Sam Howard asked [him] to interview." Finally, trial counsel testified that the only specific acts of violence by the victims brought to his attention by his clients Howard or Bowen concerned the "alleged deal in Arkansas." He testified he investigated the statement attributed to Easley that he had killed a man in Arkansas and could find no indication that the incident had occurred. The best information he could gather was that "it may have been when he was a juvenile [and so] there would be no record." His efforts to depose Easley's wife about the alleged Arkansas killing likewise was fruitless.

■■■ Failure to call a witness to testify is not ineffective assistance if counsel had no notice of the witnesses. *State v. Duckett*, 849 S.W.2d 300, 306[5] (Mo.App.1993) (citing *Sloan v. State*, 779 S.W.2d 580, 582[2] (Mo. banc 1989)). "Likewise, it is not ineffective assistance for counsel to fail to investigate witnesses whom he does not know exist." *Duckett*, 849 S.W.2d at 306[5]. By analogy, it is not ineffective assistance for counsel to fail to present evidence that he was never told existed. The trial court was not obliged to believe the testimony of Howard and Dennis Bowen that they had told their lawyer of their alleged pre-existing knowledge of the victims' violent encounters with Dowdy, Moore, Turner, or Champ. Their trial counsel testified to the contrary. Resolution of the credibility of the respective witness is for the motion court's determination. *Id.* at 306[8]. We defer to the motion court's determination of credibility. *Id.*

Finally, Howard contends that it is irrelevant whether victim Easley killed anyone in Arkansas or whether his lawyer could or could not confirm that fact. He insists that such evidence should have been presented anyway. His premise is that a history of homicide should never be considered too remote in time for purposes of establishing a defendant's justification in the use of force. Continuing, Howard also claims that even if Easley killed no one in Arkansas, his boast of killing someone would have had the same effect on his [Howard's] state of mind and perception on the night of the killing, hence, evidence of that boast would have been admissible had it been presented. Thus, he claims his trial lawyer was ineffective for not proffering that evidence.

■■■ Even if the "new rule" in *Waller*, 816 S.W.2d at 216, vests trial courts with discretion to admit evidence of a victim's "boasts" about specific acts of violence that never occurred—a result that we doubt was intended by *Waller*—we need not answer that question in this case. *Waller* teaches that a defendant must lay a proper foundation before evidence of a victim's prior specific violent acts can be admitted. 816 S.W.2d at 216[3].

Here, Howard laid no foundation whatsoever in his postconviction hearing regarding the "Arkansas killing" remark, either as an actual event or as a boast. Consequently, he has not shown that such evidence was admissible and has failed to bear his burden of showing his counsel ineffective for not offering that evidence. *See* Rule 29.15(j). Point denied.

*Failure to Object to Instructions—Ineffective Assistance*

In his ninth point, Howard contends the motion court erred in denying his postconviction motion as his trial counsel was ineffective for not objecting to Instructions No. 4, 10, and 16. He argues that defense counsel's failure to make timely and specific objections to instructions resulted in the jury receiving "[m]isleading and confusing instructions directing [their] deliberations ... without preserving this issue for appeal." [12]

The question presented by Howard's ninth point is closely related to the issue considered and rejected in Point II B of Howard's direct appeal. There we concluded that giv-

---

12. In the direct appeal we found plain error in Instruction No. 4. That finding renders moot the claims in Point IX as to Instructions No. 4 and 16.

ing Instruction No. 10 as written did not rise to the level of plain error. Specifically, we found that it did not misdirect or fail to instruct the jury upon the law to the extent that it caused manifest injustice or a miscarriage of justice.

 Although the plain error standard of review is not to be invariably equated with the standard of review for constitutional errors, *Hanson v. State*, 684 S.W.2d 337, 340[4] (Mo.App.1984), we nonetheless find apropos this reasoning from *Sidebottom*, 781 S.W.2d at 796:

"On the facts of the present case and the law as applied to them, the bases for the Court's finding of no manifest injustice on direct appeal serve now to establish a finding of no prejudice under the *Strickland* test."

Using the same reasoning applied in deciding on direct appeal that no plain error resulted from giving Instruction No. 10, we conclude that Howard fails to show that, but for trial counsel's failure to promptly and specifically object to such instruction, there was a "reasonable probability that the result would have been different." *See Sidebottom*, 781 S.W.2d at 797. Howard thus fails to satisfy the prejudice prong of the *Strickland* test. Point denied. We affirm the judgment in No. 19122.

BOWEN'S DIRECT APPEAL—NO. 18265

*Instructional Error—Plain Error Review— Victim Luttrell*

 In his third point, Bowen contends that the trial court plainly erred in submitting Instruction No. 38 to the jury. It is one of the two alternative second degree murder verdict directing instructions that submitted Bowen's possible accomplice liability for the murder of Luttrell. It is not necessary, however, that we discuss this point or instruction because we reverse Bowen's second degree murder conviction for killing Luttrell for another reason, specifically the plain error in Instruction No. 4.[13] For the reasons that Instruction No. 4 violated Howard's fundamental rights, it likewise violated Bowen's

fundamental rights and resulted in a manifest injustice and miscarriage of justice as regards Bowen's conviction for killing victim Luttrell. We reverse Bowen's conviction for killing Luttrell and remand. Necessarily, we reverse Bowen's conviction for armed criminal action relating to Luttrell and also remand it. *See State v. Weems*, 840 S.W.2d 222, 228[4] (Mo. banc 1992).

*Instructional Error—Verdict Director in Death of Victim Easley*

The subject of Bowen's second point is whether it was proper for the trial court to give Instruction No. 31. It is the first of two second degree murder verdict directing instructions submitted to the jury based on the possible accomplice liability of Bowen for the death of Easley. Bowen charges reversible error for numerous reasons, each of which we discuss separately below.

The text of Instruction No. 31 follows:

"A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with them with the common purpose of committing an offense, or if, for the purpose of committing that offense, he aids or encourages the other persons in committing it.

As to Count I, if you do not find ... Bowen guilty of murder in the first degree, you must consider whether he is guilty of murder in the second degree.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 23, 1991 ... Howard caused the death of ... Easley by shooting him, and

Second, ... Howard knew or was aware that his conduct was practically certain to cause the death of ... Easley, or that it was ... Howard's purpose to cause death or serious physical injury to ... Easley, and

Third, ... Howard did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief, then you are in-

**13.** See our discussion of Instruction No. 4 under Point II A, Howard's direct appeal, *supra*.

structed that the offense of murder in the first degree has occurred, and

if you further find and believe from the evidence beyond a reasonable doubt:

> Fourth, that with the purpose of promoting or furthering the commission of that murder in the first degree, ... Bowen aided or encouraged ... Howard in causing the death of ... Easley, then you will find ... Bowen guilty under Count I of murder in the second degree.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find ... Bowen not guilty of murder in the second degree."

The instruction combines MAI–CR.3d 313.02 (Murder in the First Degree) with MAI–CR.3d 304.04 (Parties: Defendant's Responsibility for Conduct of Another Person) and as written, instructs on Bowen's possible accomplice liability for second degree murder on the hypothesis that the principal Howard had committed first degree murder.

By Instruction No. 32 the jury was instructed on Bowen's possible accomplice liability for second degree murder on the theory that principal Howard had committed second degree murder. That instruction combines MAI–CR.3d 313.04 (Murder in the Second Degree: Conventional) with MAI–CR.3d 304.04 (Parties: Defendant's responsibility for Conduct of Another Person).

We also mention that Instruction No. 28 instructed the jury on Bowen's possible accomplice liability for first degree murder on the theory that principal Howard had committed first degree murder. Instruction No. 28 combined MAI–CR.3d 313.02 and MAI–CR.3d 304.04, as modified by Notes on Use 7(b).

Bowen's contentions under his second point include the following:

> "The trial court erred in submitting Instruction Number 31, the verdict director on accomplice liability for conventional second degree murder ... in that Instruction Number 31: (1) Failed to comply with the notes on use and failed to track the pattern instruction set forth in MAI–CR.3d 313.04

and 304.04 in violation of Rule 28.02 ... and (3) changed the State's burden of proof by permitting a finding of guilty (a) without a finding that [Bowen's] codefendant did not commit the crime under the influence of sudden passion arising from adequate cause...."

We have struggled to understand what claims of error Bowen attempts to assert by the foregoing. From the argument in his brief, we understand Bowen to say that because the jury did not find him guilty of first degree murder under Instruction No. 28, i.e., where it was hypothesized that Howard had committed first degree murder, he could not be convicted of second degree murder based on a theory that the principal Howard had committed first degree murder. He also seems to argue that only one second degree murder instruction based on accomplice liability should have been given, and that such instruction had to be patterned after MAI–CR.3d 313.04 (Murder in the Second Degree: Conventional). These arguments, made without citation to authority, are neither logically nor legally sound.

■■■ The decision whether to submit or refuse a tendered instruction is within a trial court's discretion. *State v. Leisure*, 810 S.W.2d 560, 574[33] (Mo.App.1991). For an instruction to be submitted, it "must be supported by substantial evidence and [the] reasonable inferences to be drawn therefrom." *State v. Daugherty*, 631 S.W.2d 637, 639[1] (Mo.1982); *State v. Arbuckle*, 816 S.W.2d 932, 935 (Mo.App.1991). Additionally, a court can instruct a jury on alternative theories as long as each is supported by evidence. *State v. Price*, 684 S.W.2d 566, 568[4] (Mo.App.1984). It is clear that "two murderous actors may have differing mental states, although they act together." *Ervin*, 835 S.W.2d at 923. Where because of differing mental states the liability of each actor is not the same, § 562.051, RSMo 1986, specifically allows for differing treatment:

> "[W]hen two or more persons are criminally responsible for an offense which is divided into degrees, each person is guilty of such degree as is compatible with his own culpable mental state...."

■ Here, the jury found the deliberation element as to Howard but not as to Bowen. That did not, however, prohibit the state from submitting an instruction on the higher degree of murder by the principal (Howard) in order to convict the accomplice (Bowen) on a lesser degree, *provided* there was evidence to support such submission. In our disposition of Howard's case, we found that the evidence was sufficient to support his first degree murder conviction.

We conclude that the submission of Instruction No. 31 was supported by the evidence and the state was entitled to its submission. The instruction was appropriate as to form and complied with MAI–CR.3d. As hypothesized in Instruction No. 31, the principal's crime was first degree murder, not second degree. Consequently, the second degree element, i.e., that to convict the jury must find that "[Howard] did not [kill Easley] under the influence of sudden passion arising from adequate cause" was not required in Instruction No. 31. That element was appropriately placed in Instruction No. 32. Bowen's arguments to the contrary lack merit.

In another part of his second point, Bowen makes the following contention:

"The trial court erred in submitting Instruction 31 ... in that [it]: ... (2) [f]ailed to cross-reference Instruction Number 3, Use of Force in Defense of a Third Person, and (3) changed the State's burden of proof by permitting a finding of guilty ... (b) without a finding that [Howard] did not act in lawful defense of another person, as submitted in instruction 3."

In essence, this portion of Bowen's second point presents the same issues that we considered and rejected in Point II B of Howard's direct appeal. However, Howard conceded that our review of Instruction No. 10 was under the plain error standard, whereas Bowen makes no such concession.

■ To preserve a point of instructional error for appellate review, specific objections to the given or refused instructions are required in the motion for new trial unless made on the record at the time of trial. *State v. White,* 847 S.W.2d 929, 932[6] (Mo. App.1993). "Assignments of error cannot be broadened or changed by raising them for the first time [on appeal]." *State v. Shannon,* 795 S.W.2d 426, 428[1] (Mo.App.1990).

Here, Bowen made no specific objection to Instruction No. 31 at trial. In his motion for new trial, the pertinent allegations read:

"Comes now ... Bowen, and move the Court ... to grant ... a new trial for the following reasons:

. . . .

8.) Because the Court erred in giving erroneous instructions ... as follows:

. . . .

(b) As to Steve Bowen.

In Count I the Jury found ... Bowen guilty of Murder in the Second Degree and circled # 31. # 31 is a First Degree Murder Instruction, with what appears to be a Second Degree error on the second page.

. . . .

In Count III the Jury found ... Bowen guilty of Armed Criminal Action as submitted in Instruction # 43. # 43 refers to # 31 which is a First Degree Instruction containing what appears to be a Second Degree error. # 31 should not have been an option. Only the # 32 should have been used here.

. . . .

10.) That in addition the [State's] Instructions and Verdicts are so flaunt [sic] with errors that it would be improper for a Jury to have entered a non-erroneous Verdict against ... Bowen...."

■ We view the arguments raised in this part of Bowen's second point as inconsistent with those presented to the trial court and thus insufficient to preserve the argument for appellate review. *See State v. Reichert,* 854 S.W.2d 584, 602 (Mo.App.1993). We have nonetheless reviewed the issues presented under the plain error standard. Applying the same analysis and reasoning here as we did for Instruction No. 10 in Point II B of Howard's direct appeal, *supra,* we find no manifest prejudice to Bowen that affects his substantial rights as regards Instruction No. 31. Point denied.

**494**

*Failure to Submit MAI–CR.3d 304.16—Plain Error Review*

In his fourth point, Bowen correctly points out that the trial court failed to give an instruction patterned after MAI–CR.3d 304.16 (Verdict Possibilities: One Defendant Or Multiple Defendants—Alternative Submissions Under the Same Count—One Verdict). He asserts that such failure constituted error, the prejudicial effect of which must be judicially determined. *See* MAI–CR.3d 304.16, Notes on Use 2, 5; Rule 28.02. *See also Ervin*, 835 S.W.2d at 922–23.

Bowen concedes that this error was not preserved for appellate review but requests that we examine his fourth point under the plain error standard of Rule 30.20. Having earlier described the scope of plain error review, we need not restate it here.[14]

Analyzing this point under the plain error standard, we see little potential for the jury being misdirected by the omission of MAI–CR.3d 304.16 to the extent of causing a miscarriage of justice, especially in light of the manner in which the verdict forms were prepared.

The second degree murder verdict form relating to victim Easley read thusly:

"VERDICT

As to Count I, we the Jury, find defendant Steve Allen Bowen guilty of murder in the second degree as submitted in Instruction No. 31 or 32 (circle one).

_____

FOREMAN"

■■■■■ Although a verdict form is not an instruction, *Turley Martin Co. v. American Can Co.*, 661 S.W.2d 79, 82[3] (Mo.App.1983), the form used in this case indicated to the jury that it might choose one or the other of the second degree murder alternatives, but not both. It instructed the jury to circle the instruction under which they found Bowen guilty, and the jury complied with that direction. Reading the instructions and this verdict form together in the light of the facts presented, no reasonably attentive and intel-

ligent juror could have been misled or confused by the absence of a MAI–CR.3d 304.16 instruction. *See Livingston*, 801 S.W.2d at 349; *DeJournett*, 868 S.W.2d at 532. We are warranted in adopting a more practical view of the result of failing to give the instruction when reviewing under the plain error standard. *See State v. Sanders*, 541 S.W.2d 530, 533–34 (Mo. banc 1976).

Finding no manifest injustice to Bowen that affects his substantial rights by failing to give a MAI–CR.3d 304.16 instruction, Bowen's fourth point fails.

*Sufficiency of the Evidence*

In his fifth point, Bowen challenges the sufficiency of the evidence to support his convictions. Specifically, he contends that the evidence failed to establish that (1) he fired any shots at victims Easley or Luttrell, (2) he had any intent to kill either of the victims, or (3) he acted together with Howard for the purpose of promoting or furthering murder.

Earlier in this opinion we fully recited the standard of appellate review of the sufficiency of the evidence to support a criminal conviction.[15] We review this point under that standard.

■■■■■ We also review Bowen's fifth point with the following principles in mind. Under § 562.041.1(2), RSMo 1986, a person is criminally responsible for the conduct of another when either before or during the commission of an offense, with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing, or attempting to commit the offense. *State v. LaRue*, 811 S.W.2d 40, 43 (Mo.App.1991). It is not mandatory that a defendant personally perform each act constituting an element of a crime in order to be criminally responsible for conduct of another by aiding or agreeing to aid that person in connection with the offense; rather, any evidence fairly showing affirmative participation by defendant in aiding another to commit a crime is sufficient to support conviction. *State v. Jeffries*, 858 S.W.2d 821, 824[5] (Mo.App.1993). "When

---

**14.** See Point II of Howard's direct appeal, *supra*.

**15.** See Point I, Howard's direct appeal, *supra*.

one present at the commission of an offense shows by some affirmative participation that the crime is an enterprise he wishes to bring about, he becomes an aider and abettor." *State v. Ternetz,* 740 S.W.2d 713, 714 (Mo. App.1987).

"Aiders and abettors who act with common purpose with active participants in the crime incur criminal liability by any form of affirmative advancement of the enterprise. *State v. Gannaway,* 649 S.W.2d 235, 239 (Mo.App.1983). Indicia of aiding and abetting include presence at the scene of the crime, flight therefrom and association with others involved before, during and after commission of the crime. *State v. Simpson,* 778 S.W.2d 705, 707 (Mo.App. 1989). A defendant's presence at the scene and his companionship and conduct before and after the offense are circumstances from which one's participation in the crime may be inferred. *State v. Gonzalez–Gongora,* 673 S.W.2d 811, 813 (Mo. App.1984). Proof of any form of participation by a defendant in the crime is sufficient to support a conviction. *State v. Blount,* 734 S.W.2d 309, 310 (Mo.App. 1987)."

*State v. McGowan,* 789 S.W.2d 242, 243 (Mo. App.1990).

▬▬ As to intent, the general rule is that "[i]f an accomplice has a purpose to promote an offense, he may be found to have the required culpable state of mind for that offense." *State v. Roberts,* 709 S.W.2d 857, 863 (Mo. banc 1986). To be liable as an aider and abetter, the evidence does not have to establish a defendant's specific knowledge of which particular crime his co-participant will commit. *State v. Workes,* 689 S.W.2d 782, 785 (Mo.App.1985). "[I]f a defendant has embarked upon a course of criminal conduct with others, he is responsible for those crimes which he could reasonably anticipate would be part of that conduct." *Id.* Moreover, since direct evidence probative of the mental state is rarely obtainable, it may be inferred from the circumstances. *State v. Turner,* 623 S.W.2d 4, 7 (Mo. banc 1981).

In the present case, the evidence established that three or four days before the killing, Bowen threatened to shoot Easley, saying, "I can't whip him, but I'll shoot the m____ f____." Standing alone, that testimony provides direct evidence probative of Bowen's mental state at that earlier time. *Cf. Turner,* 623 S.W.2d at 7.

At trial, Bowen testified that earlier during the day of the shooting, he entered the South End tavern accompanied by his infant daughter where, without warning and without provocation on his part, he was struck and kicked repeatedly by Easley. After the fight ended, Bowen left the tavern and went to the home of his brother, Dennis Bowen. Present at the Dennis Bowen home were Howard, Dennis and Daniel Bowen, and Rick Wadley. Bowen testified, "I told Samuel [Howard] that Terry blind-sided me at the South End, and I wanted him [Howard] to go with me because Bear [Luttrell] was there and I wanted him [Howard] to keep Bear [Luttrell] off me while I whipped Terry."

Immediately, Howard and Bowen left together in Bowen's car in search of Easley. Dennis Bowen, Donald Bowen, and Rick Wadley followed in Bowen's pickup truck. Bowen's car contained a club or stick and there was evidence that both Bowen and Howard had sticks or clubs in their hands when they called the victims into the yard. Moreover, the rifle ultimately used to shoot the victims was in Bowen's pickup truck. After failing to find Easley at the South End tavern or at his brother's shop, the entire group went to Easley's house. Once there, Bowen initiated the fight that ended only upon the death of the victims. At some point, Howard yelled, "we can do it now. We can kill them all now." Upon hearing this, Bridgett Easley responded that they weren't going to kill anybody and re-entered her house to get a stove poker. When Bridgett came back out of the house, the fighting continued, and it was then that she heard shots.

During this time Bowen did nothing to prevent the shootings that one of his group had announced would happen. He likewise failed to give any assistance after the shootings. Instead, Bowen fled the scene along with Howard and sought to evade the police. Bowen not only participated in disposing of the rifle, he also washed himself, certain

pieces of his clothing, and his car to remove blood. He and Howard then left Dunklin County in their continued effort to avoid the police.

The foregoing evidence was sufficient, without proof that Bowen actually fired the rifle, to sustain his conviction on the charge of second degree murder. From that evidence the jury could reasonably have found that Bowen initiated and participated in the plan to assault the victims, that the vehicles taken to the fight scene contained clubs and a rifle, that Bowen and his group planned to used the weapons during the fight if necessary, and that Bowen and some of his gang had clubs in their hands during the early stages of the fight. The evidence was certainly sufficient for a jury to conclude that Bowen acted with Howard for the purpose of promoting or furthering a criminal assault upon the victims. Bowen's actions reflect his purpose to promote such an offense and he is responsible for the killings that reasonably should have been expected to result from such criminal conduct. *Turner,* 623 S.W.2d at 7; *Workes,* 689 S.W.2d at 785.

From Bowen's affirmative actions and participation, it was reasonable that a juror would find the murder of Easley and Luttrell was a criminal enterprise Bowen wished to bring about and that Bowen acted along with Howard with the purpose of promoting or furthering this offense. *See State v. LaRue,* 811 S.W.2d 40, 44–45 (Mo.App.1991); *McGowan,* 789 S.W.2d at 243. Point V is denied.

*Insufficient Evidence—Armed Criminal Action Convictions*

In his sixth point, Bowen contends that the evidence was insufficient to support his convictions for armed criminal action. Such contention is sufficiently answered by the fact that: (1) the armed criminal action statutes apply to aiders and abettors, *State v. Johnson,* 805 S.W.2d 701, 703–04 (Mo.App.1991), (2) sufficient evidence existed to support Bowen's second degree murder convictions (see Bowen's fifth point, *supra*), and (3) undisputed evidence exists that a deadly weapon was used to commit these murders, § 571.015. Point denied.

*Reasonable Doubt Instruction*

In his seventh point Bowen complains of the jury instruction that defined "proof beyond a reasonable doubt." Point denied. *State v. Harris,* 870 S.W.2d 798, 811[28] (Mo. banc 1994).

### BOWEN'S POSTCONVICTION APPEAL—NO. 19123

Bowen filed a *pro se* motion for postconviction relief under Rule 29.15. Counsel was appointed for Bowen and he then filed an amended pro se motion. Following an evidentiary hearing, the motion court denied Bowen's request for postconviction relief. This appeal followed.

Earlier in dealing with Howard's postconviction appeal, we discussed in detail the scope of our review of a Rule 29.15 motion. We do not repeat that discussion here but our review is undertaken within the parameters earlier described.

In his motion, Bowen alleged that he was denied his constitutionally protected right to effective assistance of counsel because his trial counsel "[h]ad a conflict of interest that rendered his assistance to [Bowen] per se ineffective because counsel represented both [Bowen] and his co-defendant ... Howard at the same trial." In denying the Rule 29.15 motion, the motion court found that "[t]he allegation of ineffective assistance of counsel because the trial attorney represented both [Bowen] and his co-defendant is without merit because there was no actual conflict...."

On appeal Bowen contends the motion court erred in denying relief on the grounds of ineffective assistance "in that trial counsel represented both [Bowen] and ... Howard, at a joint trial, *without explaining the implications, advantages, and risks of common representation to [Bowen],* in violation of Rule 1.7 of the code of professional responsibility, and trial counsel's performance was adversely affected due to an actual conflict of interest." Continuing, Bowen asserts that *"[d]ue to counsel's errors, [Bowen] was unable to knowingly and intelligently render an affirmative waiver of the actual conflict of interest caused by this common representation."* (Emphasis added.)

497

We first observe that to the extent the italicized part of this point appears to raise issues never presented to the motion court, they are procedurally barred and will not be considered here. *Ervin,* 835 S.W.2d at 929[51]. *See* Rule 29.15(d).

Next, we note that in his brief, Bowen admits that to prove ineffective assistance of counsel because of an alleged conflict of interest, he must show that an actual conflict existed and that the conflict affected the manner in which counsel handled the case. *See Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346–47 (1980). He also acknowledges that "it is not enough for an accused to merely demonstrate that his counsel also represented a codefendant," citing *Millican v. State,* 733 S.W.2d 834, 841 (Mo.App.1987). Despite his recognition of such well established principles, Bowen proceeds nevertheless to make a nine page argument to the effect that joint representation of co-defendants did create a *per se* conflict of interest in this case. He provides no on-point authority for such argument and we reject it as contrary to controlling authority. *See State v. Wise,* 879 S.W.2d 494, 515[47] (Mo. banc 1994); *Johnson,* 772 S.W.2d at 897. *See also Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346–47; *Whitlock v. United States,* 478 F.2d 1087, 1089[2] (8th Cir.1973).

Finally, the record shows that Bowen offered no evidence in support of his allegation that an actual conflict existed. Allegations in a Rule 29.15 motion are not self-proving, and a movant must prove his allegations by a preponderance of the evidence. *State v. Clements,* 849 S.W.2d 640, 646[14] (Mo.App.1993); Rule 29.15(h). We need not recount the testimony of Bowen and trial counsel on this issue. Obviously the motion court accepted as true trial counsel's testimony that he had discussed possible conflicts with his clients and that no actual conflict of interest existed. It is equally obvious that the motion court rejected Bowen's testimony that his trial counsel never discussed the possible conflicts of interest that could flow from joint representation. Resolution of the credibility of these witnesses is for the motion court's determination. *Duckett,* 849 S.W.2d at 306[8]. We find no clear error in the trial court's findings and conclusions on this issue which are amply supported by the record. Point denied. We affirm the judgment in No. 19123.

In No. 18625 we affirm Howard's first degree murder and armed criminal action convictions arising out of the killing of Terry Easley. We reverse Howard's conviction for the killing of Billy Joe Luttrell and remand that case. In No. 18625, we affirm Bowen's second degree murder and armed criminal action convictions arising out of the killing of Terry Easley. We reverse Bowen's second degree murder and armed criminal action convictions arising out of the killing of Billy Joe Luttrell and remand those cases. We affirm the judgment in No. 19122. We affirm the judgment in 19123.

FLANIGAN and MONTGOMERY, JJ., concur.